UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ERIK JOHNSON,** *Plaintiff/Counterdefendant*, v. **PROCTORIO INC.,** *Defendant/Counterclaimant*. | Case No. _____ U.S. District Court for the District of Massachusetts <br><br> Case No. 2:21-cv-00691-DLR U.S. District Court for the District of Arizona |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
QUASH OR MODIFY SUBPOENA**

Fight for the Future ("FFTF") moves to quash or modify a subpoena ("the Subpoena") dated November 23, 2021, served on FFTF by Proctorio, Inc. ("Proctorio"). The Subpoena was issued in connection with litigation pending in the United States District Court for the District of Arizona involving a dispute between Proctorio and Erik Johnson ("Johnson"). FFTF is not a party to the Arizona litigation and, indeed, has no meaningful connection to the claims asserted by Johnson and Proctorio.

The Subpoena—which calls for production of all FFTF's documents and communications concerning Proctorio—is a transparent effort by Proctorio to abuse Rule 45 to intimidate and gain access to the strategies of digital and human rights advocates who highlight the harm of Proctorio's business practices. FFTF has already produced the small number of documents in its possession that might conceivably have any bearing on the claims at issue in the Arizona litigation. For the reasons set forth herein, FFTF respectfully requests that this Court quash the Subpoena or, in the alternative, modify the Subpoena to require production only of materials that FFTF has produced to date and to confirm that no further production is required.

**STATEMENT OF FACTS**

Fight for the Future is a Massachusetts-based non-profit organization that advocates for the rights of technology users and consumers on issues relating to technology law and policy. FFTF runs campaigns and coordinates advocacy on issues related to privacy, human rights, surveillance and free expression. Declaration of Sarah Gaudette ("Gaudette Decl.") ¶ 2. Since its founding in 2011, FFTF has been active in opposing biometric surveillance generally and the surveillance of students in particular. *Id.* ¶¶ 3-4. In 2020, FFTF began focusing on e-proctoring tools, which many educational institutions had adopted in light of the COVID-19 pandemic.[1] *Id.* ¶¶ 5. FFTF's organizing efforts have included advocacy highlighting the discriminatory nature of these e-proctoring technologies, soliciting stories from persons adversely affected by e-proctoring software, raising awareness though social media, and collecting petition signatures in support of a ban on all e-proctoring software. *See id.* ¶¶ 8, 11; Exs. SG-A, SG-B.

Proctorio is a company offering e-proctoring software that enables remote surveillance of at-home assignments and exams. The software claims to identify academic dishonesty through "face detection," eye tracking, keyboard and mouse monitoring, and recording. Usage of Proctorio's tools has been controversial, and indeed, organizations as diverse as the National Center for Fair and Open Testing, the Kairos Fellowship, and ParentsTogether have supported FFTF's proposed e-proctoring ban. *See* Ex. SG-B at 10–11.

Erik Johnson is a student at Miami University. In September 2020, he analyzed Proctorio's software and shared his findings on Twitter. Ex. MCS-A ¶ 3. Johnson linked to excerpts of code that supported his conclusions that Proctorio's software raised privacy, security,

---

[1] E-proctoring tools claim to recreate the experience of a proctor watching students take tests, usually through the use of automated systems.

2

and equity issues. *Id.* In response, Proctorio repeatedly used legal process to attempt to remove Johnson's commentary and chill his speech. *Id.*¶ 4. Johnson and FFTF engaged in sporadic communication in December 2020 and June 2021 regarding FFTF and Johnson's shared concerns about Proctorio's business practices.[2] Gaudette Decl. ¶¶ 7, 13. In March 2021, as part of his advocacy, Johnson retweeted an FFTF tweet calling for an investigation of Proctorio, as well as a tweet by an FFTF staff person calling for the banning of e-proctoring. *Id.* ¶¶ 10-11. In April 2021, Johnson filed suit, seeking declaratory judgment of non-infringement of copyright for the software code that he posted, among other remedies. Declaration of Maria Crimi Speth ("Speth Decl.") ¶ 3; Ex. MCS-A. Proctorio countersued, alleging trade libel, breach of contract, copyright infringement, and tortious interference with contract. *Id.* ¶ 4; Ex. MCS-B.

On November 30, 2021, Proctorio served the Subpoena on FFTF, a nonparty to the litigation. Speth Decl. ¶ 7. The Subpoena sought "all documents and communications" (1) between FFTF and Johnson; (2) between FFTF and the Electronic Frontier Foundation;[3] (3) between FFTF and Ian Linkletter;[4] (4) related to the proctoring software industry; and (5) related to the defendant. Ex. MCS-C at 12-13. The original Subpoena was expressly "not limited by time." *Id.* at 11.

---

[2] A FFTF staff member and Johnson also briefly exchanged messages on various matters using Signal. Signal is a secure digital communications platform used by millions worldwide, including activists and journalists. FFTF is unable to produce any communication made on Signal, as those communications were set up with disappearing messages prior to Proctorio's subpoena.
[3] The Electronic Frontier Foundation is counsel for Johnson, and in separate and unrelated matters, FFTF. The Foundation is also a staunch critic of privacy invasions, including e-proctoring.
[4] Ian Linkletter is a learning technology specialist and critic of Proctorio. Proctorio has sued Linkletter in the Supreme Court of British Columbia. *See Proctorio, Inc. v. Linkletter*, No. S-208730, 2021 BCSC 1154.

FFTF submitted objections to the Subpoena on December 3, 2021, and after communications between counsel, FFTF produced all correspondence in its possession between FFTF and Johnson, fulfilling Request (1). Speth Decl. ¶¶ 8-10; Exs. MCS-D, MCS-E, MCS-F. Ensuing discussions prompted Proctorio to drop Requests (2), (3) and (4) and limit the remaining requests to documents produced after January 1, 2018. Speth Decl. ¶¶ 11; Ex. MCS-G. FFTF restated its objections to Request (5) as outside the scope of the current litigation. Speth Decl. ¶ 12; Ex. MCS-H. On February 18, 2022, counsel for FFTF and Proctorio conferred on the scope of the Subpoena but were unable to reach an agreement. Speth Decl. ¶ 13.

## LEGAL STANDARD

Attorneys "must take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Fed. R. Civ. P. 45(d)(1). If a subpoena imposes an undue burden, a court must quash or modify that subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iv). In assessing undue burden, courts look at "the relevance of the documents sought, the necessity of the documents sought, [and] the breadth of the request." *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008). For non-parties, inconvenience and expense are also taken into account. *Demers v. Lamontagne,* No. Civ. 98-10762-REK, 1999 WL 1627978 at *2 (D. Mass. May 5, 1999). In fact, the First Circuit has cautioned that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing [discovery] needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). Likewise, "when . . . discovery would have the practical effect of discouraging the exercise of constitutionally protected associational rights, the party seeking such discovery must demonstrate a need for the information sufficient to outweigh the impact on those rights." *Sexual Minorities of Uganda v. Lively*, No. 3:12-30051-MAP, 2015 WL 4750931, at *3 (D. Mass. Aug. 10, 2015).

**ARGUMENT**

Though cries of "fishing expedition" may be passé, *see Hickman v. Taylor*, 329 U.S. 495, 507 (1947), Proctorio's use of Rule 45 is a veritable trawling operation. Proctorio's requests are a thinly veiled attempt to appropriate this court's resources to extract information regarding the internal workings of a non-party advocacy organization with, at best, a tangential connection to the underlying litigation. Moreover, the Subpoena appears to be specifically calculated to chill FFTF's future advocacy by blunting its speech and deterring association. These factors weigh heavily in favor of quashing the Subpoena.

Proctorio cannot satisfy even the general standard articulated in Rule 45, let alone the heightened standard to which the Subpoena is subject. The portion of the Subpoena in dispute— the request for "all documents and communications related to [Proctorio]"—would produce documents irrelevant to the litigation at hand, imposes an undue burden on FFTF, and is improperly motivated by a desire to access FFTF's internal strategy. For these reasons, the Subpoena should be quashed or modified.

**I.      A heightened relevance standard applies as FFTF's First Amendment speech and associational rights are threatened by this discovery request.**

The Constitution protects the rights of organizations and individuals to "engage in association for the advancement of beliefs and ideas." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958).  "Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private. Compelling disclosure of internal campaign communications can chill the exercise of these rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162–63 (9th Cir. 2010).  These are exactly the rights that FFTF has exercised in its work against the e-proctoring industry.

Courts protect these rights by requiring heightened relevance in cases, such as this one, where First Amendment rights are at risk. In *Perry,* a case involving discovery requests for internal communications between opponents of marriage equality, the Ninth Circuit held that where First Amendment rights would be chilled by discovery requests for internal strategic communications, there is a higher bar for relevance. *Id.* at 1164. This Court has recognized that the associational privilege described in *Perry* "protects internal policy or campaign communications concerning contested political issues." *Sexual Minorities of Uganda v. Lively*, No. 3:12-30051-MAP, 2015 WL 4750931, at *3 (D. Mass. Aug. 10, 2015) (allowing for the redaction of material protected by the associational privilege).

FFTF's associational rights and ability to "advance . . . shared political beliefs" are squarely at issue in this case. *Perry*, 591 F.3d at 1162. In fact, Proctorio's allegations acknowledge that the relevance of FFTF's communications turns on the advancement of shared political beliefs – that is, the belief that e-proctoring software represents a fundamental threat to the human rights of students who are forced to use it. Revealing FFTF's internal communications about Proctorio, even only to its attorneys, would chill its advocacy and prevent the FFTF from "formulat[ing] strategy and messages," the core associational rights at issue in *Perry*, *id.*, and discussed by this Court in *Sexual Minorities of Uganda*, 2015 WL 4750931, at *3.

It is not just FFTF's associational rights that are at issue; it is also its ability to gather information necessary for its campaigns. In *Cusumano v. Microsoft Corp.*, the First Circuit upheld the district court's denial of a motion to produce notes, interviews, and correspondence held by non-party researchers. 162 F.3d 708, 717 (1st Cir. 1998). The *Cusumano* court explained that special protection is warranted when subpoenas are directed at actors who "gather and disseminate information," because "[t]o withhold such protection would invite a 'chilling effect

6

on speech.'" *Id.* at 714 (quoting *United States v. LaRouche Campaign*, 841 F.2d 1176, 1181 (1st Cir. 1988)). This protection is not limited to journalists, as "the medium an individual uses to provide [their] investigative reporting to the public does not make a dispositive difference in the degree of protection accorded to [their] work." *Id.*

Proctorio's capacious discovery efforts raise the same concerns identified in *Cusumano*. FFTF is actively organizing against the abuses of the online proctoring software industry. By demanding any communications related to Proctorio, the Subpoena will necessarily turn up internal planning and strategy documents and chill future organizing efforts. Gaudette Decl. ¶ 16.

Targets of Proctorio's behavior include not just FFTF, but also the third parties with which FFTF communicates. Last June, FFTF launched a website asking individuals to share their e-proctoring horror stories. *See* Ex. SG-B at 11-12. Proctorio's overbroad Subpoena is sure to sweep in stories shared by students and their families about the harmful impacts of Proctorio's software. Although Proctorio has suggested it would be willing to accept these materials under an "Attorneys Eyes Only" designation, forced disclosure to anyone outside of FFTF could injure FFTF's credibility with the vulnerable communities who seek its help. Gaudette Decl. ¶ 17. This concern is heightened by Proctorio's past behavior. Even outside of the context of this litigation, the company has an ugly history of targeting students who speak out against the software. *See, e.g.*, Naaman Zhou, *CEO of Exam Monitoring Software Proctorio Apologises for Posting Student's Chat Logs on Reddit*, THE GUARDIAN, July 1, 2020 (recounting how Proctorio's CEO published a student's technical support chat logs on the internet).[5] FFTF's ability to gather

---

[5] https://www.theguardian.com/australia-news/2020/jul/01/ceo-of-exam-monitoring-software-proctorio-apologises-for-posting-students-chat-logs-on-reddit [https://perma.cc/PQ7Q-KEGL].

information from those who are most affected by Proctorio's questionable practices will be jeopardized by any forced disclosure of these materials.

The Subpoena must be held to a relevance standard commensurate with its imposition on FFTF's associational and speech rights. Proctorio's fishy request does not clear that bar.

**II.     The Subpoena does not meet the standard in Rule 45, let alone the heightened standard to which it is subject.**

   **A.    The subpoenaed material is not relevant or necessary to the underlying litigation.**

Proctorio's request to produce "all documents and communications related to the Defendant" seeks documents irrelevant to the litigation against Johnson. FFTF complied with the only plausibly relevant portion of the Subpoena when it produced all communication with Johnson. *See* Speth Decl. ¶ 10; Ex. MCS-F. Proctorio's remaining blanket request would reach documents that FFTF developed for its advocacy campaigns—including documents created more than two years prior to the tweet that Proctorio hangs its claims of coordination upon—and never communicated to any party in the Arizona litigation.

The burden is on Proctorio to "disclose some relevant factual basis for their claim before requested discovery will be allowed." *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988). In response to FFTF's objections, Proctorio claimed that production of this material is necessary to vindicate their claim of trade libel and defense of unclean hands. Ex. MCS-E at 5–7. However, neither basis Proctorio alleges—trade libel or unclean hands—has any connection to FFTF's campaign strategy, non-party communications, or other documentation about Proctorio, nor is there any evidence that such documents would lead to other discoverable materials. *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41–42 (1st Cir. 2003) (affirming quashing of subpoena when documents requested "are not obviously, and perhaps not even reasonably, calculated to lead to other discoverable materials"). As to the first claim,

Proctorio unconvincingly avers that FFTF is involved in a widespread conspiracy enabling Johnson's alleged libel.[6] However, this is a red herring. The trade libel claim is against Johnson, not FFTF. To prove trade libel under Arizona law, Proctorio must establish—among other elements—that Johnson had "intent or knowledge that the publication will result in harm." *FLP, LLC v. Wolf*, Nos. CV17-0214 PHX DGC, CV17-0773 PHX DGC, 2017 WL 4699490, at *2 (D. Ariz. Oct. 19, 2017) (citing Restatement (Second) Torts § 623A; *Gee v. Pima City*., 612 P.2d 1079, 1079 (Ariz. Ct. App. 1980)). Only Johnson's intent or knowledge is at issue here—*not* that of FFTF. Any relevant material would have been produced in response to Request (1). The remaining materials—documents and communications to which Johnson was not privy—simply could not influence his intent or knowledge. Relevance of Request (5) to Proctorio's trade libel claim is thus implausible, if not impossible.

Similar reasoning applies to Proctorio's defense of unclean hands. "To prevail on a defense of unclean hands [under Arizona law], a defendant must demonstrate 'that the plaintiff's conduct is inequitable.'" *World Nutrition Inc. v. Advanced Enzymes USA*, No. CV-19-00265-PHX-GMS, 2020 WL 7123033, at *1 (D. Ariz. Decl. 4, 2020) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)). Again, there is simply no way in which FFTF's research and campaign materials on Proctorio are relevant to the cleanliness of Johnson's hands. Indeed, this Court, in considering a similar attempt to seek non-party discovery

---

[6] Proctorio's counterclaim in the Arizona litigation alleges that Johnson "acted in concert with" FFTF. *See* Ex. MSC-B ¶ 122. Proctorio asserts that this allegation of coordination is enough to warrant disclosure of FFTF's internal strategic documents and third-party communications. *See* Ex. MCS-E at 4. However, the only materials remotely relevant to coordination would be communications between FFTF and Johnson, and FFTF has already produced all of those that are in its possession. To the extent Proctorio believes that FFTF independently defamed it or its CEO, the appropriate response is to bring a case against FFTF, not to use unrelated litigation to retaliate.

to prove a defense of "unclean hands" drew exactly the distinction that FFTF argues for. In *Blount Intern., Ltd. v. Schuylkill Energy Resources, Inc.*, this Court drew the same line that FFTF proposes, holding that the defendant "may seek information regarding any communications and transactions between [the plaintiff] and [a non-party] in order to discover acts done or statements made by [the plaintiff] which render [his] hands unclean. But [the defendant] may not, under the guise of defending against [the plaintiff's] claims for equitable relief, inquire into [a non-party's] activities." 124 F.R.D. 523, 527–528 (D. Mass. 1989). This Court should likewise ensure that Proctorio is not using discovery to harass or build a separate case against FFTF.

To reiterate, FFTF has already produced all communications in its possession between itself and Johnson. Any additional documents or communications are not relevant, let alone necessary, to Proctorio's claims or defenses. However irksome Proctorio may find FFTF's advocacy, the relevance standard keeps Proctorio from being able to cast any farther than the communications exchanged with Johnson.

**B.     The Subpoena is overbroad and imposes an undue burden.**

In addition to being irrelevant, Proctorio's requests for production are excessively broad and burdensome. This Court has quashed similar subpoenas in the past. In *Smith v. Turbocombustor Tech., Inc.*, an employment discrimination suit, this Court held that non-party subpoenas for "all documents" served on the plaintiff's former employers, spanning seven broad categories and going back eleven years, were so broad as to constitute an independent basis to quash. 338 F.R.D. 174, 177 (D. Mass. 2021). In *Trustees of Boston University v. Everlight Electronics Co., Ltd.*, a patent infringement case regarding LEDs, this Court quashed a non-party subpoena seeking (1) all communications between the non-party and the defendants related to LEDs and (2) all communications between the third-party and its subsidiaries related to the

defendants' LEDs as overbroad. No. 12-CV-11935-PBS, 2014 WL 12792496, at *4–5 (D. Mass. Sept. 8, 2014).

Proctorio's request is just as overbroad those in *Smith* and *Everlight*. Like the subpoenas at issue in *Smith*, the Subpoena here seeks all documents related to a party held by a non-party—although unlike the *Smith* subpoenas, the Subpoena does not have guiding categories to specify the types of documents Proctorio seeks. *See Smith*, 338 F.R.D. at 176. Nor did Proctorio limit the Subpoena to communications between specific entities, as the plaintiff in *Everlight* did. *See Everlight*, 2014 WL 12792496 at *4. Rather, the Subpoena demands all materials, whether communicated externally or not, that so much as relate to Proctorio. This would at a minimum include every document or communication mentioning Proctorio by name, but could also include "related" documents about FFTF's advocacy strategy in general. FFTF has actively been advocating against the e-proctoring industry for two years, meaning that the discovery request could include hundreds of emails and documents. And FFTF is a small organization with fewer than ten full-time employees, despite its reach. Gaudette Decl. ¶ 4. Production of the documents would interfere with its ability to continue its advocacy and work on the issues that matter. This Court should not leave a non-party on the hook for such a sweeping amount of information.

    **C.**    **The Subpoena is improper, as the remaining request seeks information about FFTF, not Erik Johnson.**

On top of seeking information that is both irrelevant and overbroad, the Subpoena is also objectionable because it is plainly targeted at uncovering information to use against FFTF and broader opposition to e-proctoring, not Johnson. The Supreme Court has encouraged courts to inquire into the purpose of discovery requests and to deny them "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352 n.17 (1978).

11

Here, Proctorio's requests, while unlikely to generate relevant evidence, appear to have been a vehicle to procure internal documents about FFTF's independent organizing against Proctorio and the proctoring software industry. Rule 45 is a narrow tool for discovery relevant to the present litigation—not a weapon for a litigious party to gather ammunition for further litigation or for personal vendettas. *See Britton v. Marcus, Errico, Emmer & Brooks*, No. 18-cv-11288-IT, 2021 WL 3604841 at *6 (D. Mass. Aug. 13, 2021) (quashing third-party subpoena where plaintiff's overly broad discovery requests suggested the subpoena was a product of the plaintiff's "intention to rehash issues outside the scope of this litigation"). The breadth of the requests in question, background to the litigation, claims at issue in this case, and sufficiency of the other requests for production all show that this is a crudely veiled attempt to gather information for Proctorio to silence its critics.

As discussed above, FFTF's internal strategic discussions regarding Proctorio are irrelevant to the claims in the litigation against Erik Johnson. The breadth of the original Subpoena, before it was narrowed, makes the impermissible intention even more clear. The original subpoena sought to use the Arizona litigation as a vehicle for procuring all communications between FFTF and Ian Linkletter, a learning technology specialist who spoke up against Proctorio and subsequently was sued by the company. It also sought communications between FFTF and the Electronic Frontier Foundation, who, in addition to being Erik Johnson's counsel, advocates against privacy abuses. That Proctorio dropped these demands when FFTF asserted its rights does not prevent a court from considering this context. The scope of the Subpoena points to a straightforward conclusion: Proctorio's true intention is to gain insider information on communications between advocates against the spyware/e-proctoring industry.

That information will not further Proctorio's lawsuit against Erik Johnson—it is useful only to retaliate against FFTF and other likeminded organizations for making waves.

Proctorio has done everything short of chartering a boat to fish for information on FFTF's advocacy strategy. FFTF has already acted in good faith by producing the potentially relevant documents in its possession. *See* Speth Decl. ¶ 10. Proctorio's allegations that FFTF's internal documents and third-party communications will expose a conspiracy lurking under the surface just do not hold water. And so, FFTF urges this Court not to take the bait.

## CONCLUSION

For the foregoing reasons, FFTF respectfully requests that the Court modify the Subpoena to require production only of correspondence between FFTF and Johnson, which FFTF has already done, and to quash any and all of the Subpoena's remaining requests for production.

Dated: February 18, 2022

Respectfully submitted,

_____
Kendra Albert (BBO No. 705086)
   *Honorific/Pronouns: Mx., they/them/their*
Mason Kortz (BBO No. 691257)
   *Honorific/Pronouns: Mr., he/him or they/them*
Cyberlaw Clinic[7]
Harvard Law School
1557 Massachusetts Ave, 4th Floor
Cambridge, MA 02138
Tel: 617-384-9125
Fax: 617-812-3050
Email: kalbert@law.harvard.edu

*Counsel for Fight for the Future*

---

[7] Fight for the Future thanks Harvard Cyberlaw Clinic students Jeffrey Jiang (HLS JD '22), Zoe Kaiser (HLS JD '23), and Jaylia Yan (HLS JD '22) for their invaluable assistance in drafting this motion.

13