**Exhibit MCS-B to Declaration of Maria Crimi Speth**

Justin D. Kingsolver (AZ Bar No. 035476)
JKingsolver@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: 202-624-2500

Gabriel M. Ramsey (CA Bar No. 209218)*
GRamsey@crowell.com
Kristin Madigan (CA Bar No. 233436)*
KMadigan@crowell.com
Kayvan M. Ghaffari (CA Bar No. 299152)*
KGhaffari@crowell.com
Jacob Canter (CA Bar No. 324330)*
JCanter@crowell.com
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: 415-986-2800

* *Admitted pro hac vice.*

*Attorneys for Defendant Proctorio, Inc.*

CROWELL & MORING LLP
ATTORNEYS AT LAW

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

Erik Johnson, an individual,

Plaintiff,

v.

Proctorio, Inc., a Delaware corporation,

Defendant.

---

Proctorio, Inc., a Delaware corporation,

Counterclaimant,

v.

Erik Johnson, an individual,

Counterdefendant.

No. 2:21-cv-00691-DLR

**PROCTORIO INC.'S ANSWER TO PLAINTIFF'S COMPLAINT & FIRST AMENDED COUNTERCLAIMS (WITH JURY DEMAND)**

Defendant Proctorio, Inc. ("Proctorio") hereby answers the Complaint of Plaintiff Erik Johnson ("Plaintiff" or "Mr. Johnson").

## INTRODUCTION*

1.      Proctorio admits that Plaintiff has filed a civil action seeking a declaratory judgment of noninfringement, injunctive relief, and damages for misrepresentation under the Digital Millennium Copyright Act ("DMCA").  Proctorio otherwise denies the allegations stated in this paragraph.

2.      Proctorio admits that as a consequence of the COVID-19 pandemic and concomitant shut-down of in-person testing, schools and universities have increased adoption of remote proctoring software.  Proctorio admits that reasons schools and universities may have for potentially adopting proctoring software include ensuring adherence to assignments and rules, and identifying potential academic dishonesty.  Proctorio admits that proctoring programs employ various methods to enable universities to identify potential academic dishonesty and ensure academic integrity.  Proctorio denies that its software tracks eye movement.  Proctorio admits that, in order to detect academic dishonesty, universities and faculty members can choose to select and activate settings in its software that can identify: (i) head movement that may indicate that the examinee is reviewing information outside of the device, (ii) the general presence of additional faces in the room where the exam is taking place (without identifying any particular face), and (iii) if the examinee leaves the room.  Proctorio further admits that, in order to detect academic dishonesty, universities and faculty members can choose to activate settings in its software that can identify excessive keystroke activity (*e.g.*, if a student types 15,000 characters while taking a 50-question multiple-choice exam) or mouse movement.  Proctorio admits that only universities and faculty members can choose to trigger settings in its software that

---

* The section headings in this Answer are provided solely for ease of reference, tracking those used in the Complaint, and do not constitute any part of Proctorio's response to the allegations in the Complaint or any form of admission as to the truth of the allegations.

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

1  can record limited audio and video for their own purposes, but Proctorio denies that

2  Proctorio can trigger such settings independently without university and faculty

3  involvement.[1]  Proctorio lacks knowledge or information to form a belief as to the truth of

4  the remaining allegations, and therefore denies them.

5        3.      Proctorio admits that Plaintiff is a college student whose university has

6  contracted to use Proctorio software.  Proctorio admits that Plaintiff posted his views

7  regarding Proctorio's software on the social media website Twitter, and that some of

8  Plaintiff's tweets linked Proctorio's copyrighted software code that Plaintiff posted on

9  Pastebin and GitHub.  Proctorio denies that Plaintiff's use of Proctorio's copyrighted

10  material constitutes fair use, much less "a textbook fair use."  Proctorio denies that

11  Plaintiff's use of Proctorio's copyrighted material was lawful under Section 107 of the

12  Copyright Act.  Proctorio denies that its software code is publicly available, as it is subject

13  to, *inter alia*, access controls and Proctorio's terms of service.  Proctorio denies that

14  Johnson engaged in a careful analysis of the software code, or that his review should

15  constitute an "analysis" based on the reasonable understanding of that word.  Proctorio

16  admits that it has and continues to productively address all privacy, security, and equity

17  questions raised about the software, and that whenever good-faith questions about the

18  software's implications for privacy, security, and equity are raised, it has promptly

19  answered them.  Proctorio otherwise lacks knowledge or information to form a belief as to

20  the truth of the remaining allegations, and therefore denies them.

21        4.      Proctorio admits that it has taken appropriate steps to protect its copyrights

22  through informal means, through third-party platforms' "abuse claim" processes, and

23  through the DMCA.  Proctorio denies that it has ever "pressured" Plaintiff to do anything

24  in any way.  Proctorio denies that it made any false claims at any time to any person in

25

26  [1] In response to the allegations in footnote 1, Proctorio denies that the term "face detection" has only one definition as set forth in footnote 1.  Proctorio admits that some

27  technology can be used to detect the general presence of faces as well as facial movement and direction within an image or video.  Proctorio denies that it uses any "face detection"

28  with all of the elements described in the definition in footnote 1.

3

relation to its assertion of its legal rights.  Proctorio admits that Twitter, Pastebin, and GitHub all initially removed the copyrighted material, and that Twitter and GitHub restored certain of those materials back onto their respective websites.  Proctorio otherwise lacks knowledge or information to form a belief as to the truth of the remaining allegations, and therefore denies them.

5.	Proctorio denies that it committed any unlawful acts at any time it directly or indirectly was asserting its legal rights.  Proctorio denies that Plaintiff has made every effort to work with Proctorio to resolve the dispute between the parties.  Proctorio lacks knowledge or information to form a belief as to the truth of the remaining allegations, and therefore denies them.

## PARTIES, JURISDICTION, AND VENUE

6.	Proctorio admits that Plaintiff is an individual.  Proctorio lacks knowledge or information to form a belief as to the truth of the allegation that Plaintiff—who describes himself as a student at Miami University in Oxford, Ohio who returned to campus three months before the filing of this lawsuit (*see* Compl. ¶ 11)—is domiciled in Libertyville, Illinois, and therefore denies the remaining allegations in this paragraph.

7.	Proctorio admits the allegations in this paragraph.

8.	Proctorio admits the allegations in this paragraph.

9.	Proctorio admits the allegations in this paragraph.

10.	Proctorio admits the allegations in this paragraph.

## GENERAL ALLEGATIONS

### A.	Johnson's Speech

11.	Proctorio lacks knowledge or information to form a belief as to the truth of these allegations, and therefore denies them.

12.	Proctorio admits that Miami University has contracted with Proctorio to provide remote exam proctoring services.  Proctorio lacks knowledge or information to form a belief as to the truth of the allegation that some of Plaintiff's instructors have chosen to administer exams using Proctorio's software.  Proctorio denies that its software

4

uses eye tracking.  Proctorio admits that, in order to detect academic dishonesty, universities and faculty members can choose to trigger settings in its software that can identify: (i) head movement that may indicate that the examinee is reviewing information outside of the device, (ii) the general presence of additional faces in the room where the exam is taking place (without identifying any particular face), and (iii) if the examinee leaves the room.  Proctorio denies that it determines what constitutes "suspicious behavior," because universities and faculty members make such determinations based on their own academic policies.  Proctorio lacks knowledge or information to form a belief as to the truth of the remaining allegations, and therefore denies them.

13.    Proctorio lacks knowledge or information to form a belief as to the truth of these allegations, and therefore denies them.

14.    Proctorio admits that only after a user affirmatively agrees to install the Proctorio software are language files and a JavaScript file then downloaded onto a computer.  Proctorio denies that any files are automatically downloaded onto any user's computer without the consent of the user, the instructor of that user's course, and that user's educational institution.  Proctorio denies that the JavaScript is intentionally scrambled or obfuscated.  Proctorio admits that language files contain messages in human languages.[2]  Proctorio lacks knowledge or information to form a belief as to the truth of the remaining allegations, and therefore denies them.

15.    Proctorio admits that Plaintiff published a "tweet thread" starting on September 7, 2020.[3]  Proctorio admits that Plaintiff looked at Proctorio's source code. Proctorio denies that the tweets which contain Proctorio's copyrighted material are related to any legitimate criticism, or any actual critique of Proctorio at all, for that matter. Proctorio denies that Plaintiff identified any contradiction between Proctorio's public

---

[2] In response to the allegations in footnote 2, Proctorio admits that one purpose for language files can be to facilitate software use and adaptation in different locations and to allow the software to display the appropriate natural language based on location. Proctorio denies that this is the sole purpose for language files.

[3] Proctorio admits the allegations in footnote 3.

CROWELL & MORING LLP
ATTORNEYS AT LAW

1   statements and the actual functionality of Proctorio's software.  Proctorio denies that
2   Plaintiff demonstrated the invasiveness of the Proctorio software, or illustrated a high level
3   of access that the software has to users' computers.  Proctorio otherwise lacks knowledge
4   or information to form a belief as to the truth of the remaining allegations, and therefore
5   denies them.

6       16.     Proctorio denies that Plaintiff included links to Proctorio's copyrighted
7   material in order to support any actual conclusions, let alone legitimate criticism.  Proctorio
8   admits that some of Plaintiff's tweets included links to Proctorio's copyrighted software
9   code that Plaintiff had uploaded onto a website called Pastebin.[4]  Proctorio lacks
10  knowledge or information to form a belief as to the truth of the remaining allegations, and
11  therefore denies them.

12      17.     Proctorio admits that Plaintiff published the statements in the relevant tweet
13  in Exhibit 1.  Proctorio denies that its software has any default metrics that are used to
14  determine a student's suspicion level; rather, those determinations are made solely by
15  individual schools and faculty members.  Proctorio denies that its software monitors any
16  examinees' activity with the *only* exception being in the event a university or faculty
17  member activates and enables such features and directs and controls the use of such
18  features.  Proctorio admits that Plaintiff linked to Proctorio's copyrighted material.
19  Proctorio admits that while its language file includes the phrase "eye movement," Proctorio
20  denies that its software has ever actually tracked eye movement.

21      18.     Proctorio admits that Plaintiff published the statements in the relevant tweet
22  in Exhibit 1.  Proctorio denies that its software compares different exam-takers to one
23  another using the metrics identified in Exhibit 3 (or any other metrics) absent direction and
24  control by the faculty member or school.

25      19.     Proctorio admits that Plaintiff published the statements in the relevant tweet
26  in Exhibit 1.  Proctorio denies that its software automatically terminates an exam for any

27

28  [4] Proctorio admits the allegations in footnote 4.

CROWELL & MORING LLP
ATTORNEYS AT LAW

1    reason.  Interruptions in internet connectivity for over two minutes may be one basis for

2    exam termination depending on how the settings are configured by the faculty member or

3    school, and plugging in an additional monitor could also be a basis for exam termination

4    depending on how the settings are configured by the faculty member or school.  Proctorio

5    admits that Plaintiff published the copyrighted source code at Exhibit 2.

6         20.    Proctorio admits that the quoted language appeared in Plaintiff's tweet.

7    Proctorio denies that its software conducts a room scan "if your suspicion level rises."

8    Rather, room scans are triggered according to a randomized algorithm that does not include

9    any consideration of suspicion levels, and only if the school has permitted, directed and

10   controlled this functionality to be in place.  Proctorio admits that Plaintiff included a

11   screenshot of a copyrighted video in the referenced tweet.

12        21.    Proctorio admits that Plaintiff's tortious activity continued over the next

13   week (and beyond), including Plaintiff posting tweets on September 11 containing a

14   Pastebin link to three lines of Proctorio's copyrighted software code.  Proctorio admits that

15   this code identifies highly sensitive information—a previously unpublished list of

16   programs that Proctorio blocks during testing sessions to prevent academic dishonesty—

17   and that its disclosure undermines the integrity of the test-taking process.  Proctorio denies

18   that it scrambles or obfuscates any of its code based on the plain meaning of the Google

19   store's terms of service, and Proctorio admits that the code at Exhibit 5 is also not

20   scrambled or obfuscated.  Proctorio lacks knowledge or information to form a belief as to

21   the truth of the remaining allegations, and therefore denies them.[5]

22             **B.    Fair Use**

23        22.    Proctorio admits that the so-called "Excerpts" and Video Screenshot

24   contained copyrightable (and, in fact, copyrighted) material.  Proctorio denies the

25   remaining allegations.

26

27   [5] In response to the allegations in footnote 5, Proctorio admits that sandboxing is a
     computer-security practice.  Proctorio denies that the tweet at Exhibit 5 either expressly or
28   implicitly makes any statements related to the security practice described in this footnote.

CROWELL & MORING LLP
ATTORNEYS AT LAW

23.     Proctorio admits that the fair use analysis includes four statutory factors that can be described in this way.  Proctorio denies that these are the only considerations in assessing whether or not a particular use of copyrighted material constitutes fair use.

24.     Proctorio denies these allegations.

25.     Proctorio denies these allegations.

26.     Proctorio denies these allegations.

27.     Proctorio denies these allegations.

### C.     Proctorio's Campaign of Harassment

28.     Proctorio admits that Plaintiff asked Proctorio's CEO (Mr. Mike Olsen) about the company's software over Twitter.  Proctorio admits that Mr. Olsen answered the question Plaintiff raised.  Proctorio denies that Mr. Olsen made any demands of any kind.  Proctorio admits that Mr. Olsen informed Plaintiff that his use of Proctorio's copyrighted material also violated the company's terms of service and undermined the integrity of the test-taking process.  Proctorio admits that Plaintiff responded that there is "No TOS checkbox necessary to access" the company's copyrightable material, but denies the truth of this statement.  Proctorio admits that Plaintiff responded that anyone could find and uncover the copyrightable material, but denies the truth of this statement.  Proctorio otherwise lacks knowledge or information to form a belief as to the truth of the remaining allegations, and therefore denies them.

29.     Proctorio admits that its software's *automated* process banned Plaintiff's IP address based on activity that the software automatically associates with efforts to circumvent the software.  Proctorio denies that any Proctorio employee knew Plaintiff's IP address on September 7 or 8.  Unless there is a specific security or technical issue that requires the contrary, Proctorio employees do not know any test-taker IP addresses at any time, ever, unless the test-taker or school provides the information directly to Proctorio to allow Proctorio to unblock the IP address from its *automated* blocking processes.  Even more crucial here, because Proctorio employees did not know Plaintiff's IP address, there was no way that Proctorio employees could have purposefully blocked Plaintiff's IP

address; Proctorio employees simply lack the ability and capability to do so. Proctorio denies that Plaintiff was forced to seek special accommodations after the automated ban occurred.[6] Proctorio otherwise lacks knowledge or information to form a belief as to the truth of any remaining allegations, and therefore denies them.

30. Proctorio admits that on or around September 9, a representative from Miami University reached out to a Proctorio representative, and after being contacted by the school representative, the Proctorio representative inquired about whether Plaintiff's tweets were consistent with the school's behavior policies. Proctorio denies that, in its communications with Miami University, it failed to state that the tweets included the company's proprietary copyrighted material. Proctorio admits that the school representative informed it that the tweets could not be taken down based on the school's internal behavior policies. Proctorio otherwise lacks knowledge or information to form a belief as to the truth of any remaining allegations, and therefore denies them.

31. Proctorio admits that Exhibit 7 indicates that Twitter sent an email to an email address that appears to belong to Plaintiff on October 19, which explains Twitter's decision to take down three of Plaintiff's tweets that linked to Proctorio's copyrighted material in response to a DMCA notice filed by Proctorio. Proctorio lacks knowledge or information to form a belief as to the truth of the remainder of these allegations, and therefore denies them.

32. Proctorio admits that on or around September 28, 2020, Pastebin disabled access to Proctorio's copyrighted material, and that Pastebin issued a notice to that effect. Proctorio also admits that, on or around September 28, 2020, it submitted a DMCA notice to Pastebin. Proctorio otherwise lacks knowledge or information to form a belief as to the truth of these allegations, and therefore denies them.

33. Proctorio admits that Plaintiff submitted a counternotice to Twitter on

[6] *See, e.g.*, Ex. B-3 at 4 (**Nov. 23, 2020 tweet):** "'We reached out to the school and offered to unban his IP address on September 9' . . . Who did they contact at the university? I have received no communication from my university on this matter. However, *even if my IP was unbanned from the software, I would not use it.*" (emphasis added).

9

October 30, 2020.  Proctorio otherwise lacks knowledge or information to form a belief as to the truth of these allegations, and therefore denies them.

34.     Proctorio admits these allegations.  Specifically, as Exhibit 8 indicates, Proctorio admits that after Pastebin had removed Plaintiff's infringing content from its platform, Plaintiff decided to double down on his infringing conduct and "re-post the information in them on another platform"—GitHub.

35.     Proctorio admits that it submitted a DMCA notice to GitHub, that GitHub disabled access to Plaintiff's infringing material, that Plaintiff submitted a counternotice on November 24, 2020, and that GitHub restored access on or around December 9, 2020.  Proctorio denies that its DMCA notice contained any false information.  Proctorio otherwise lacks knowledge or information to form a belief as to the truth of these allegations, and therefore denies them.

36.     Proctorio admits that its counsel informed Plaintiff's counsel that it had submitted a second DMCA notice to Twitter.  Proctorio admits that its copyrighted code was removed by Pastebin.  Proctorio otherwise lacks knowledge or information to form a belief as to the truth of these allegations, and therefore denies them.

37.     Proctorio admits that its legal counsel participated in a phone call with Plaintiff's legal counsel on November 30, 2020.  The substance of this phone call, however, plainly consists of confidential "statement[s] made during compromise negotiations about the claim," which Federal Rule of Evidence 408 clearly protects.  Therefore, Proctorio will neither admit nor deny any facts relating to the content of that conversation between the parties' counsel.

38.     These allegations refer to confidential "statement[s] made during compromise negotiations about the claim," which Federal Rule of Evidence 408 protects.  Therefore, Proctorio will neither admit nor deny any facts relating to the content of that conversation between the parties' counsel.  Proctorio denies that its copyrighted code was contained in unprotected files, and further denies that its copyrighted code could be read by anyone who installed its software.

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

39.     These allegations refer to confidential "statement[s] made during compromise negotiations about the claim," which Federal Rule of Evidence 408 plainly protects.  Therefore, Proctorio will neither admit nor deny any facts relating to the content of that conversation between the parties' counsel.  Proctorio denies that the copyrighted code that Plaintiff posted "represented only a miniscule portion" of its software code; rather, Plaintiff's posts contained highly-sensitive information that provided a roadmap for test-takers to circumvent all of Proctorio's software.

40.     These allegations refer to confidential "statement[s] made during compromise negotiations about the claim," which are protected by Federal Rule of Evidence 408.  Therefore, Proctorio will neither admit nor deny any facts relating to the content of that conversation between the parties' counsel.  Proctorio denies that Plaintiff infringed Proctorio's copyrights "specifically to support his critical commentary" (or even in conjunction with any critical commentary whatsoever), whether at the time of sending the DMCA notice to GitHub or the abuse claim to Pastebin, or at any other time that Plaintiff infringed Proctorio's copyrights.

41.     These allegations refer to confidential "statement[s] made during compromise negotiations about the claim," which Federal Rule of Evidence 408 plainly protects.  Therefore, Proctorio will neither admit nor deny any facts relating to the content of this e-mail communication between the parties' counsel, except to admit that this e-mail communication included in its subject line the words "Confidential" and "Subject to Rule 408."  Proctorio denies that its DMCA notices or abuse claim contained any inaccuracies.  Proctorio admits that Plaintiff's posts on Twitter, Pastebin, and GitHub infringed Proctorio's copyrighted material.

42.     Proctorio lacks knowledge or information to form a belief as to the truth of these allegations, and therefore denies them.

43.     Proctorio denies that it has ever asserted an "improper copyright claim."  Proctorio lacks knowledge or information to form a belief as to the truth of the remainder of these allegations, and therefore denies them.

11

CROWELL & MORING LLP
ATTORNEYS AT LAW

1

# CLAIMS FOR RELIEF

2

## <u>Count 1</u>

3

### Declaratory Judgment of Noninfringement

4    44.    Proctorio incorporates its responses to each and every allegation above as if

5  fully set forth herein.

6    45.    Proctorio denies that there is a real and actual controversy as to whether

7  Plaintiff used and infringed Proctorio's copyrighted material, as Plaintiff admits that he has

8  used and infringed Proctorio's copyrighted material.  Proctorio admits that there is a real

9  and actual controversy as to whether Plaintiff's use of the copyrighted material constitutes

10  fair use.

11    46.    Proctorio admits that Plaintiff contends that his creation and use of the

12  copyrighted material was consistent with the fair use doctrine.  Proctorio denies that

13  Plaintiffs' creation and use of Proctorio's copyrighted material was consistent with the fair

14  use doctrine.

15    47.    Proctorio denies these allegations.

16    48.    Proctorio admits that it has not withdrawn its DMCA requests or its abuse

17  claims to take down Plaintiff's infringing content.  Proctorio admits, on information and

18  belief, that Pastebin removed Plaintiff's infringing content posted on that platform based on

19  the fact that Pastebin policies prohibit its users from posting another's source code, and not

20  based on copyright, and that Pastebin has not restored Plaintiff's infringing posts.

21    49.    Proctorio admits that it continues to assert its legal rights, as protected by,

22  *inter alia*, the First and Fifth Amendments to the U.S. Constitution.  Proctorio otherwise

23  denies these allegations.

24    50.    Proctorio admits that Plaintiff has continued a months-long campaign to

25  publicly disparage and misrepresent Proctorio, its officers, executives, employees, and its

26  software.  Proctorio denies the remainder of these allegations.

27    51.    Proctorio denies these allegations.

28

12

**Count 2**

**Misrepresentation Under 17 U.S.C. § 512(f)**

52.     Proctorio incorporates its responses to each and every allegation above as if fully set forth herein.

53.     Proctorio denies these allegations.

54.     Proctorio denies these allegations.

55.     Proctorio denies these allegations.

56.     Proctorio denies these allegations.

**PRAYERS FOR RELIEF**

Proctorio denies that Plaintiff is entitled to any relief whatsoever, specifically including the relief specified in its Prayers for Relief.

**PROCTORIO'S AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

FIRST AFFIRMATIVE DEFENSE TO EACH AND EVERY CAUSE OF ACTION

(**Failure to State a Claim**)

As a first and separate defense, solely by way of an affirmative defense and not to be construed as an admission, Proctorio alleges that, as to the first cause of action, Plaintiff has failed to prove that his use of the copyrighted material constitutes fair use. Each of the four statutory factors and the judicially established considerations that courts consider in regards to fair use analyses turn in favor of Proctorio and against Plaintiff.  As to the second cause of action, Plaintiff has failed to meet any of the elements necessary to establish a claim under 17 U.S.C. § 512(f).  This includes, though is not limited to, a failure to establish any misrepresentations made in relation to takedown notices, a failure to establish that Proctorio lacked a subjective good-faith belief that the takedown notices were proper, and a failure to establish either any injury or damages.  Plaintiff is thus not entitled to any relief.  This affirmative defense incorporates by reference each and every paragraph to this Answer and the Counterclaims that follow.

CROWELL & MORING LLP
ATTORNEYS AT LAW

13

SECOND AFFIRMATIVE DEFENSE TO EACH AND EVERY CAUSE OF ACTION

(**Unclean Hands**)

As a second and separate defense, solely by way of an affirmative defense and not to be construed as an admission, Proctorio alleges that, after engaging in a campaign of intentionally false statements impugning Proctorio, its products, and its senior executives, Plaintiff comes to this court with unclean hands to bring any claim premised on any alleged misrepresentations or any theory of fair use of the copyrighted material that he infringed.  Plaintiff should therefore be barred from recovering the relief requested or any relief from Defendant.  This affirmative defense incorporates by reference each and every paragraph to this Answer and the Counterclaims that follow.

THIRD AFFIRMATIVE DEFENSE TO EACH AND EVERY CAUSE OF ACTION

(**No Injury or Damages**)

As a third and separate defense, solely by way of an affirmative defense and not to be construed as an admission, Proctorio alleges that Plaintiff has not incurred any actual or present injury or damages as a direct and proximate result of Defendant's conduct.  The copyrighted material that Proctorio sought to take down under the DMCA remain online on pages that Plaintiff controls and operates.  To this end, he has suffered no injury or damages as a result and he is thus not entitled to any relief.  This affirmative defense incorporates by reference each and every paragraph of this Answer and the Counterclaims that follow.

FOURTH AFFIRMATIVE DEFENSE TO THE SECOND CAUSE OF ACTION

(**Mootness**)

As a fourth and separate defense, solely by way of an affirmative defense and not to be construed as an admission, Proctorio alleges that Plaintiff's claims are barred, in whole or in part, by the doctrine of mootness.  The copyrighted material that Proctorio sought to take down under the DMCA remains online on pages that Plaintiff controls and operates.  To this end, any injury that he suffered is no longer present and no judicial action taken can change Plaintiff's state of affairs.  Plaintiff is thus not entitled to any

CROWELL & MORING LLP
ATTORNEYS AT LAW

1   relief. This affirmative defense incorporates by reference each and every paragraph to this
2   Answer and the Counterclaims that follow.

3   <u>FIFTH AFFIRMATIVE DEFENSE TO THE FIRST CAUSE OF ACTION</u>
4   (**Plaintiff's Conduct is Administratively Improper and Lacks Ripeness**)

5   As a fifth and separate defense, solely by way of an affirmative defense and not to
6   be construed as an admission, Proctorio alleges that, as to the first cause of action,
7   Proctorio has filed DMCA takedown notices, and Plaintiff has filed counter-notices, the
8   effect of which has led to all of the material he has sought to publish remaining online.
9   There is no injury and no damages and the next step, as administratively dictated and
10  expected, is for Proctorio to file a suit, at which time Plaintiff can file a declaratory
11  judgment of non-infringement in response. This cause of action is accordingly improper
12  as dictated by the Copyright Act, and lacks ripeness.

13  <u>SIXTH AFFIRMATIVE DEFENSE TO THE FIRST CAUSE OF ACTION</u>
14  (**No Fair Use**)

15  As a sixth and separate defense, solely by way of an affirmative defense and not to
16  be construed as an admission, Proctorio alleges that, as to the first cause of action,
17  Plaintiff's use of Proctorio's materials is not primarily for the purposes of criticism and
18  commentary. Rather, Plaintiff made clear that his primary purposes for publishing this
19  material is to destroy the market for Proctorio's copyrighted material, destroy Proctorio's
20  actual or prospective business relationships and to "abolish online proctoring." Plaintiff's
21  use of Proctorio's materials is for the purpose of furthering false and misleading
22  statements, which he has made in bad faith. As a self-described "Security & Privacy
23  Researcher" (*see* Ex. B), Plaintiff has profited from his infringing conduct by, *inter alia*,
24  attention, recognition, and notoriety that resulted from his publication of Proctorio's
25  copyrighted material. Even if Plaintiff's primary purpose of posting this material was for
26  the purposes of criticism or commentary—which it was not—Plaintiff's use of Proctorio's
27  protected material was not of reasonable length to accomplish any goals of criticism or
28  commentary. Plaintiff has used a quantitatively and qualitatively substantial part of

CROWELL & MORING LLP
ATTORNEYS AT LAW

15

Proctorio's copyrighted material, all of which is highly creative. Plaintiff's use of Proctorio's copyrighted material has significant effect on the market (and potential market) for and value (and potential value of) those materials. This affirmative defense incorporates by reference each and every paragraph to this Answer and the Counterclaims that follow.

### SEVENTH AFFIRMATIVE DEFENSE TO THE SECOND CAUSE OF ACTION

#### (**Proctorio's Conduct is Constitutionally Protected**)

As a seventh and separate defense, solely by way of an affirmative defense and not to be construed as an admission, Proctorio alleges that Plaintiff's claims are barred, in whole or in part, because any or all of Defendant's conduct at issue in Plaintiff's allegations is constitutionally protected. Proctorio is entitled under, *inter alia*, the First and Fifth Amendments to protect its intellectual property interests and to avail itself of any and all administrative, judicial, or legal processes to that end, including but not limited to those processes established in the DMCA. Plaintiff is thus not entitled to any relief. This affirmative defense incorporates by reference each and every paragraph to this Answer and the Counterclaims that follow.

### RESERVATION OF DEFENSES

Proctorio reserves all rights to plead any additional, separate defenses, the availability of which may come to light as the action proceeds. Further, Proctorio reserves all rights to withdraw any defenses it may subsequently determine to be inapplicable. Nothing in the foregoing defenses constitutes a concession that Proctorio bears any burden of proof on any issue on which it would not otherwise bear such a burden.

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

**PROCTORIO'S FIRST AMENDED COUNTERCLAIMS AGAINST PLAINTIFF**

1.      Every American deserves access to higher education.  Responsibilities such as child care, working multiple jobs to help pay for higher education, or caring for an elderly parent should not deny aspiring students access to the classroom.  Nor should having a disability, living far from campus, or public health crises such as the COVID-19 global pandemic.

2.      And that education must be meaningful.  A degree is worthless if it is not trusted.  Higher education can open doors to new opportunities and progress, but only if employers and graduate schools are confident that a degree represents an individual's legitimate experience and academic training.

3.      A meaningful, legitimate education is essential for a robust, reliable economy.  We trust bridges because they are designed by engineers with certifications and licenses only conferred after years of training and intensive competency exams.  We send our children to pediatricians because we know doctors cannot practice unless they pass the boards.  We entrust accountants with our retirement funds and lawyers with our IOLTA accounts because those professionals must take and pass a set of rigorous exams and adhere to ethical codes to participate in those professions.  Reliable test results are necessary for this trust to exist.

4.      Proctorio CEO Mike Olsen understands this.  He founded Proctorio in 2013, recognizing there was an expanding need to protect exam integrity in online or distance learning environments.  Most other remote proctoring solutions rely on the schedules of outsourced proctors or force test takers to register for their exams outside of their institution's assessment platforms.  But Mike Olsen understood that was not necessary.  Through Proctorio, he sought to modernize higher education and expand access to degrees that the public can trust, breaking down barriers to remote education.

5.      Proctorio licenses software that protects the integrity of examinations—*i.e.*, the software helps schools and faculty offer remote instruction while also identifying potential academic dishonesty during exams.  The product has three main functions.  First,

17

it helps confirm a test-taker's identity, because it goes to the heart of exam integrity to ensure that the person receiving the grade for the exam is the same individual who is actually taking the exam.  Second, Proctorio software helps determine if a test-taker is referring to prohibited content or consulting other people during an exam, because if one test-taker has an unfair advantage, it harms the integrity of the entire exam.  Last, Proctorio can block certain programs on a test-taker's computer (*e.g.*, web browsers, e-mail programs), to ensure test-takers are all taking the exam from the same starting point.

6.      No software is perfect.  Remote test-proctoring software is still a new technology.  While it has grown in popularity, the COVID-19 global pandemic changed everything.  In a very short period of time, thousands of schools and millions of students who had never used remote proctoring technology immediately needed this software to keep classes open.  This shift led to a groundswell of violations of exam integrity,[7] but also increased scrutiny of the software platforms trying to prevent it.  That scrutiny is absolutely a good thing, and Proctorio welcomes constructive criticism aimed at improving its product.  But bad faith allegations and false accusations attacking Proctorio and its CEO Mike Olsen in violation of the law are a different matter altogether.

7.      Erik Johnson, a Miami University-Oxford undergraduate student, is one of the voices raising concerns about remote proctoring software like Proctorio's.  For example, on September 7, 2020, Mr. Johnson suggested on Twitter that Proctorio should soften the language in the pop-up notifications that test-takers see during stressful exams. *See* Ex. B-3 at 31.[8]  A few days later on September 11, 2020, Mr. Johnson raised awareness about a university professor who was using Proctorio's software improperly.  *See id*. at 28.

---

[7] *See, e.g.*, Tawnell D. Hobbs, *Cheating at School Is Easier Than Ever—and It's Rampant*, WALL ST. J. (May 12, 2021), *available at* https://www.wsj.com/articles/cheating-at-school-is-easier-than-everand-its-rampant-11620828004?mod=e2tw (last viewed June 25, 2021) (attached as Ex. A).

[8] Exhibit B is in three parts due to size, and citations refer to Exs. B-1, B-2, and B-3. Also, Exhibit B displays the tweets in Greenwich Mean Time (GMT), while Proctorio has sought to reflect the dates and times for this Counterclaim in Pacific Standard Time (PST) for consistency's sake, as Johnson reflected dates/times in PST as well.

CROWELL & MORING LLP
ATTORNEYS AT LAW

18

CROWELL & MORING LLP
ATTORNEYS AT LAW

1   Others have raised concerns that Proctorio's software may unfairly impact students with

2   disabilities and racially-diverse students.  *See* Ex. C.

3        8.      Proctorio's leadership heard this constructive feedback, and has taken swift

4   action to address it.  The company tempered the language in its pop-up notifications to

5   better protect student morale during examinations.  The company has developed an

6   acceptable use policy for faculty so that it can ban professors who abuse the platform.  And

7   to confront the issues faced by students with disabilities, Proctorio has partnered with My

8   Blind Spot, a consulting firm that helps improve digital infrastructure to make it more

9   accessible and inclusive to people with disabilities.  Likewise, to make its platform as

10  inclusive as possible, Proctorio has commissioned a top-to-bottom audit of its algorithm

11  from BABL AI, a firm that specializes in evaluating algorithms for bias and issuing

12  recommendations to improve the platform.

13       9.      But good-faith criticism of Proctorio and its product are not the subject of

14  these counterclaims ("Counterclaims").  Proctorio welcomes good-faith criticism from Mr.

15  Johnson or anyone else, as long as such is within the bounds of the law, and the company

16  has a proven track-record of responding to real concerns.

17       10.     The problem is that many of Mr. Johnson's statements about Proctorio

18  have, unfortunately, not been made in good faith and are false or misleading.  In fact, since

19  September 2020, Mr. Johnson has consistently published statements about Proctorio that he

20  either knows are false or misleading, or that he has made with a reckless disregard of their

21  falsity or misleading nature.

22       11.     Mr. Johnson has stated that Proctorio secretly invades students' local

23  computers and, after entering the computer, can both spy on and obtain sensitive data from

24  students without their knowledge or consent.  **False.**  Mr. Johnson allegedly investigated

25  Proctorio language files and source code to make this claim.  He does not explain how this

26  software possibly elucidates this conclusion, or how any of Proctorio's software allows the

27  company to surreptitiously invade student computers.  This is because his accusations are

28  false, are not based on software analysis, and reflect a lack of understanding of how the

19

1  code operates.

2      12.     Mr. Johnson has stated that Proctorio "obfuscates" its code to hide the

3  functionality and, in doing so, violates the Google Chrome Store terms of service.  **False.**

4  Software developers understand the difference between "obfuscation" and the concept of

5  "minification," where the latter is a common, run-of-the-mill process to remove

6  unnecessary characters to ensure more efficient code transmission.  Google understands the

7  distinction, which is why its Chrome Store terms of service expressly permit minification,

8  while banning obfuscation.  Minification is all that Proctorio has done with its code.  Mr.

9  Johnson has accused Proctorio of obfuscation with either a knowing or reckless disregard

10 for the falsity of his claims.

11     13.     Mr. Johnson has stated that Proctorio leaves student data highly vulnerable

12 to theft and disclosure and that the company lies about its data-protection efforts.  **False.**

13 Proctorio has state-of-the-art data protection mechanisms in place and regularly updates its

14 technology to protect student data.  The data protection is so strong that not even Proctorio

15 can access student information.  Indeed, Proctorio takes this public commitment so

16 seriously that it has engaged consultants at a highly-regarded security consulting firm

17 *specifically* to validate an extra layer of encryption key security to make doubly sure that

18 Proctorio cannot access student data.  Mr. Johnson both ignores these facts and accuses

19 Proctorio of lying about these data protection efforts, all while falsely impugning Proctorio

20 as a "Teenage Lap Cam."

21     14.     And Mr. Johnson has stated that Proctorio makes determinations as to

22 whether students are flagged for academic dishonesty.  **False.**  Only schools and faculty

23 can make those decisions.  Mr. Johnson knows this from (1) taking classes that use

24 Proctorio software, (2) his position on the university subcommittee investigating remote

25 proctoring software, and (3) his review of the company website and a letter Proctorio sent

26 to the United States Senate.

27

28

20

15. Indeed, Mr. Johnson's university dispels his allegations on the very webpage from which it directs students to download Proctorio to use in exams.[9]  Under the prominent header "Privacy and Data Security," Miami University-Oxford debunks in plain English all of Mr. Johnson's false claims:

**Privacy and Data Security**

Proctorio is a third-party remote proctoring tool adopted by Miami University. Proctorio is browser-based and requires an extension to be installed on Chrome. The goal of using Proctorio is to encourage honest work and maintain high standards of integrity and for both instructors and students to have confidence in the overall integrity of the assessment. The use of Proctorio, is first and foremost, meant to serve as a reminder that remote assessments are treated in the same manner they would in face-to-face assessments.

Depending on the settings controlled by individual instructors, students' browsers and/or tabs may be locked down, and students' webcam, computer screen, sound, web traffic, Miami IDs, and room environment may be recorded. Proctorio only runs during the exam period. After finishing the exam, students may choose to uninstall the Proctorio extension, and just reinstall it before the next exam. Additionally, Proctorio does not watch student exams live, unless the student requests live support during the exam.

Privacy provisions have been established to ensure student privacy and FERPA compliance. According to Proctorio's policies and terms of agreement, we are of the understanding that Proctorio has zero access to the encrypted data on their own servers. Data are transferred and stored with zero-knowledge encryption and can only be accessed by course instructors and authorized university officials.

16. In short, Mr. Johnson's public statements are not good-faith criticisms about a new technology, much less "criticisms" at all.  They do not represent a legitimate effort to raise awareness about real concerns with the software.  They cannot even be called confused misstatements about how the software operates.  With these statements, Mr. Johnson is publishing statements he knows are false.  He is not a "white hat" hacker with aims to help improve data security.  His aim is not to improve Proctorio, but instead to not have Proctorio at all.[10]

17. Nor are Mr. Johnson's statements mere opinions, even though he may himself be frustrated with virtual learning.[11]  Mr. Johnson refers to himself as a "security

---

[9] *See* "Proctorio for Students," MIAMI UNIV. (last viewed June 30, 2021), *available at* https://www.miamioh.edu/online/resources/proctorio-for-students/index.html.

[10] For example, four weeks after filing this case, Mr. Johnson re-tweeted a call to "Abolish online proctoring."  *See, e.g.*, Ex. D; *see also* Ex. E ("We need to ban remote proctoring right now.").

[11] *See* Ex. A (quoting Plaintiff: "Erik Johnson, an 18-year-old freshman at Miami University in Oxford, Ohio . . . said he knows students who have used homework help sites for studying—and for cheating.  He said he hasn't cheated himself.  He said students, including himself, are frustrated with virtual learning because there's less interaction with instructors and it's not as structured.  'I haven't struggled this way with learning material, ever,' he said. 'It's just really difficult to learn and retain the information just exclusively at your own pace.'").

CROWELL & MORING LLP
ATTORNEYS AT LAW

21

researcher" (Compl. ¶ 11).[12]  He published these false statements after he claimed to have conducted an "investigation of the software code" (*id.* ¶ 15).  His Complaint fully acknowledges that his tortious tweets sought "to report his findings from his investigation of the Proctorio Software and to provide evidence supporting his assertions." *Id.* ¶ 24. "Findings" and "evidence"—not "opinions."

18.    Mr. Johnson's falsities have travelled far and wide.  He has intentionally directed them towards both the general public and also towards specific universities and faculty members.  He has primarily published them over Twitter, but has also published his false and misleading statements, in national, state, and local fora.

19.    Though Mr. Johnson published his false statements in cyberspace, they have real-world consequences.  Among Proctorio's university clients, they raise unfounded concern about the legitimacy and security of Proctorio's product—unfounded concerns that Proctorio's clients and prospective clients have raised in subsequent negotiations.  They unlawfully defame Proctorio's executives.[13]  They unfairly cast doubt on the reliability of Proctorio's statements regarding its product, and they have caused Proctorio concrete commercial injuries.  These consequences are, in fact, exactly what Mr. Johnson appears to want.  Specifically, on several occasions, Mr. Johnson has expressed pure joy over institutions boycotting Proctorio's products over the same unfounded and false "concerns" he has raised, including:

a.    **January 28, 2021 re-tweet:** lauding University of Illinois' decision to

---

[12] *See also* Ex. B-1 at 3, which reflects Mr. Johnson's Twitter profile, on which he describes himself as a "Security & Privacy Researcher."

[13] For instance, in two March 3 tweets, Mr. Johnson twice re-tweeted a black-and-white mugshot-style picture of Mike Olsen, who is described as Proctorio's "creepy CEO," and suggested that Mr. Olsen had developed a "Teenage Lap Cam." *See* Ex. F (**Mar. 3, 2021 re-tweets**).  Mr. Johnson likewise shared an article published on the webpage of an organization called "Fight for the Future"—which, on information and belief, Mr. Johnson and those closely connected to him, including, on information and belief, at least one member of his immediate family, are affiliated with—which falsely described Proctorio's technology as "literally mak[ing] young people film themselves for a spyware app" and suggested Proctorio sent its DMCA notices because "Mike [Olsen] was SO bummed that Erik [Johnson] would dare to interrupt Mike's filming of teenage laps." *See* Ex. G.  The disgusting—and legally unacceptable—implication of these Tweets was apparent.

22

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

apparently stop using Proctorio and re-tweeting the message "1 down, over a thousand universities and colleges to go.  In 2021, Proctorio will pay." *See* Ex. H.

b.  **April 19, 2021 tweet:** lauding University of Warwick Business School's cancelling a Proctorio trial following a student petition against the use of Proctorio.  Ex. I.

c.  **March 18, 2021 tweet:** lauding the University of British Columbia's apparent decision to ban the use of Proctorio software and tweeting at Miami University and its president Jason Osborne urging "It's time for other institutions to do the same.  I'm looking at you, Miami."  Ex. B-1 at 17.

d.  **February 20, 2021 tweet:** lauding the Online Teaching Conference withdrawing its agreement with Proctorio to sponsor the event.  Ex. B-2 at 7. Proctorio has been left with no choice but to respond to the false and misleading statements which have been intentionally made to harm its business.[14]

20.     In addition, Mr. Johnson has broken contractual promises intended to benefit Proctorio and has purposefully and repeatedly infringed Proctorio's copyrights.

21.     To use Proctorio and to download its software, Mr. Johnson agreed not to access and disclose the company's copyrighted software platform and services.  He made this promise with Miami University-Oxford expressly to protect Proctorio's interests.

22.     Nonetheless, Mr. Johnson violated this agreement when he accessed and then disclosed the language files and source code that underlies the Proctorio product. Even more troubling, Mr. Johnson did this with knowledge that the source code he was disclosing would allow students to circumvent the technology to cheat on exams.  In other words, Mr. Johnson *not only* violated his promise to protect Proctorio's technology he *also*

---

[14] Before this lawsuit, Proctorio tried to find ways to positively address any problems that Mr. Johnson has with the company.  In addition to efforts to communicate with Mr. Johnson and to provide answers to his questions, Proctorio has even sent him and his associates, at Mr. Johnson's request, Proctorio t-shirts bearing the company's name and logo in a goodwill gesture.

took steps that he _knew_ would substantially undermine the product's efficacy.

23.     And Mr. Johnson's use of Proctorio's copyrighted materials fares no better. His publishing of Proctorio's language files, source code, and user interface provide absolutely no value to his purported criticism about the company.  The disclosures do not add greater clarity, understanding, or depth to the criticism.  They do not reinforce or better-articulate his criticism.  They do not help the reader understand the criticism in a new light or otherwise benefit the criticism in any fashion.  All that the disclosures of Proctorio's copyrighted material do is make it easier for others to circumvent the product, cheat on exams, wrongfully further the false and misleading statements, and ultimately destroy the market for the very same copyrighted material.

24.     Proctorio cannot simply stand by as an individual deliberately and wrongfully attempts to undermine the value and efficacy of a security product into which Proctorio—and its university clients—have invested so much.  Mr. Johnson is infringing Proctorio's copyrights, violating the terms of his agreement with Proctorio, and making false and misleading statements about its product.

25.     For these reasons, and to protect its legal rights in the face of an unchecked campaign of falsehoods, Proctorio regrettably must bring these Counterclaims.

## PARTIES

26.     Defendant / Counterclaimant Proctorio, Inc. is a Delaware corporation with its principal place of business in Scottsdale, Arizona.

27.     Plaintiff / Counterdefendant Erik Johnson is an undergraduate student at Miami University in Oxford, Ohio, who on information and belief is domiciled in Libertyville, Illinois.

## JURISDICTION AND VENUE

28.     Based on the allegations in Counterdefendant's complaint filed in this action ("Complaint"), there presently exists a justiciable controversy.

29.     This Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1331, and 1338(a), and because some claims arise under the Copyright Act

CROWELL & MORING LLP
ATTORNEYS AT LAW

24

17 U.S.C. § 101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

30.     This Court also has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the statutory minimum, and Counterdefendant is diverse with Counterclaimant.

31.     This Court has personal jurisdiction over Counterdefendant because, *inter alia*, Counterdefendant filed suit in this district.

32.     Venue is proper in this judicial district under 28 U.S.C. § 1391 and/or 1400 at least because Counterdefendant has filed the Complaint in this District.

33.     Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental subject-matter jurisdiction over Proctorio's state-law claims because these claims are so related to the copyright claims herein that they form part of the same case or controversy.

## GENERAL ALLEGATIONS
### Proctorio's Remote Exam Proctoring Software Is a Widely Adopted Product That Significantly Expands Access to Higher Education

34.     Hundreds of colleges and universities in the United States have chosen to license Proctorio's software to expand secure remote access to higher education.  Many of the nation's most well-respected higher educational institutions trust Proctorio to protect academic integrity for distance learners across the globe.

35.     The need for Proctorio intensified once the global COVID-19 pandemic closed the door to in-person exams.  But Proctorio had already been on the steady rise, having grown substantially between its founding in 2013 and 2019.

36.     Schools have widely adopted Proctorio because it is effective, flexible, and easy to use.  It is a fully-automated platform that offers features that allow schools and faculty—not Proctorio—to make exam integrity decisions.  This significantly lowers the time and cost associated with ensuring exam integrity, and also allows students to take exams from anywhere with confidence that the results can be trusted.

37.     Proctorio's software lets schools decide from a menu of institution-wide settings that assist in flagging data for a faculty member's review that may indicate activity

CROWELL & MORING LLP
ATTORNEYS AT LAW

that (in the opinion of the faculty member) evinces academic dishonesty.  For any particular exam, the faculty member must decide which settings to turn on.  The software documents the activity associated with the relevant settings and provides a report that aids the school in reviewing the raw underlying data collected by Proctorio.  The school and faculty—<u>not Proctorio</u>—may then determine for themselves whether the exam was completed consistent with the school's policies.

38.    These points bear emphasizing.  First, **Proctorio does not decide what data is collected.**  It offers software features that a school can license, and that a faculty member can then decide to turn on or off for any particular exam.  Second, **Proctorio does not analyze any student data.**  It collects data at the school's and faculty's direction and control, and then automatically prepares a report that the school and faculty can review.  And third, **Proctorio does not decide what behavior is flagged as potentially inconsistent with exam policies.**  A student's school and faculty make <u>all</u> of these decisions.

39.    Proctorio also does not hide its product functionality.  In fact, before every exam, the student must affirmatively consent to using the Proctorio software, and is told what exam-integrity features chosen by her university will be in place during the exam.

40.    As already noted, these features have three basic functions: (1) to confirm the examinee's identity; (2) to determine whether the examinee is relying on prohibited content or third-parties; and (3) to block certain programs on an examinee's computer.

41.    For the first function, Proctorio asks the examinee to hold up a photo identification card.  Either a school administrator or the faculty member can compare the ID card to the examinee's image after the exam, or a Proctorio agent can make the comparison in real-time if the university requests that service.

42.    For the second function, Proctorio collects and then automatically generates a report describing whether an examinee relied on extra-exam materials.  If the university chooses to enable it, the platform can collect examinee video, and then can automatically mark where in the video the examinee looks away from the screen, or where a second face

CROWELL & MORING LLP
ATTORNEYS AT LAW

shows up.  It can collect exam audio, and then can mark where the sound is loud enough to suggest that the examinee spoke to another person during the exam.  And it can collect screen or website activity, and then can auto-generate a list of websites visited during the exam.  Again, this can all occur automatically if the school or faculty select that option, or the school and faculty can choose features where Proctorio agents conduct a first-level review when potential issues arise.

43.     And for the third function, Proctorio blocks access to device functionalities which may enable academic dishonesty.  For example, Proctorio can stop examinees from using virtual machines during the exam, which can allow third-parties to take exams from different locations.  Proctorio can also require examinees to use a full screen or only one screen; can disable new tabs and close open tabs; can disable printing, the clipboard, and right-click functionality; and can clear the cache and prevent exam re-entry.  Universities and faculty can change, enable, or disable any of these features.

44.     Each of these features operate within a heavily protected environment that ensures the examinee's personal information is secure from breach and exposure beyond its limited purpose to protect exam integrity.  **Biometrics are <u>never</u> collected by the company.**  Proctorio does not use biometric analysis like facial recognition, keystroke fingerprinting, or voice recognition.  All data used to support live proctoring and verification functions are immediately deleted.  And all other data is preserved solely at the school's direction, and only after informing the student of how, where, and for how long the data will be stored.

45.     Proctorio's data encryption efforts are state-of-the-art.  Proctorio secures and processes examinee data through multiple layers of encryption.  Transmission from the examinee's device to Proctorio data centers happens over TLS 1.2 or 1.3 and, if the browser supports it, Perfect Forward Secrecy ("PFS").  Data temporarily stored in Proctorio's data center is encrypted using AES-256 and is protected with FIPS 140-2 compliance.  All data centers are SOC 2 attested.  The company's browser extension uses an encryption layer secured with AES-GCM.  And the platform undergoes daily

CROWELL & MORING LLP
ATTORNEYS AT LAW

27

1    vulnerability and penetration tests to help mitigate the risk of a data security incident.

2        46.    Moreover, when Proctorio publicizes that it has "zero-knowledge

3    encryption," it means that the company does not have encryption keys to decrypt any audio

4    or video data.  Records can **only** be accessed by the faculty or school, or by Proctorio

5    agents under the direction and control of the faculty and school.  This bears repeating: it is

6    **impossible** for Proctorio to access any student data without first being given access to that

7    information affirmatively from the school or the student.  Proctorio's access is completely

8    directed and controlled by the school, always revocable by the school, and – in fact –

9    extremely rare.  For example, the only situations where Proctorio might even be granted

10   limited access is in a troubleshooting instance (but even then, Proctorio's typical practice is

11   to request a screen share) or with the professional review functionality (which has been

12   used in approximately 0.0005% of all exams taken with the software).

13       47.    Moreover, Proctorio recognizes that the data security environment is

14   dynamic, and takes a proactive approach against security and privacy threats.  In mid-2020,

15   Proctorio engaged a leading information security consulting company to perform security

16   assessments of its software and cloud environment.  Proctorio recently achieved ISO 27001

17   certification,[15] and it successfully completed a SOC 2 Type 1 audit.[16]  All of these data

18   protection audits are *voluntary*; Proctorio takes these steps to protect its users.

19       48.    And finally, the Proctorio agents who support the live product features are

20   heavily vetted.  Each is a company employee.  And each employee receives a background

21   check and five weeks of training before taking any live proctoring or verification

22   assignment.  In no situation may the employee obtain or use the data reviewed for exam

23   purposes outside of the narrow direction provided by the school.

24

25   [15] *See* "Proctorio achieves ISO 27001:2013 Information Security Certification" (June 25,
     2021) *available at* https://blog.proctorio.com/proctorio-achieves-iso-270012013-
26   information-security-certification/.

27   [16] *See* "Proctorio Becomes SOC 2 Type 1 Compliant Proctoring Provider" (Apr. 14,
     2021), *available at* https://blog.proctorio.com/proctorio-becomes-soc-2-type-1-compliant-
28   proctoring-provider/.

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

**Mr. Johnson's Knowledge About Proctorio & Its Product**

49.     Mr. Johnson knows all of this.  Everything described above about Proctorio and its product is publicly available, and Mr. Johnson had acknowledged that he has read and reviewed this same information.  Indeed, every single time since September 2020 that Mr. Olsen has tweeted about Proctorio, Mr. Johnson has tweeted a response.  Mr. Johnson's focused attention on Proctorio and all of the company's activities over the past ten months strongly indicate that he is aware of the actual facts.  *See, e.g.*, Ex. B ("Proctorio" appears in Mr. Johnson's tweets 263 times since September 2020).

50.     Mr. Johnson states that he has attended classes that use Proctorio, and that his classmates have taken exams with the software.  (Compl. ¶¶ 11-12).  He also admits that he downloaded the software onto his local computer.  (*Id*. ¶ 14).  Mr. Johnson thus knows or should know that the company informs students upon downloading the software and prior to using the software what data is collected and how it is stored.  And he thus also knows or should know that his school and faculty decide what data is collected, where the information is stored, the data securities measures in place, and for how long data is retained.

51.     Mr. Johnson has reviewed Proctorio's material about the software.  He admits to reviewing the website (Compl. at Ex. 6[17]) and the company's software-as-a-service ("SaaS") agreements.  (Ex. B-2 at 16-17).  He admits to reviewing the private contracts that Proctorio enters with colleges and universities, which he obtained via freedom-of-information requests.  (*Id*. at 28-29).  And he admits to reviewing the twenty-two-page letter that Proctorio prepared in response to an inquiry from six United States Senators investigating the remote test proctoring industry.  (*Id*. at 22[18]); *see also* Ex. J. Having reviewed these abundant materials, Mr. Johnson knows or should know all of the

---

[17] This Exhibit discloses a conversation in which Mr. Olsen sends Mr. Johnson a link to Proctorio's website, and Mr. Johnson responds that the website is "clarifying" and "address[es his] concerns."  Compl. at Ex. 6.

[18] The third link in the tweet from John Davisson links to Proctorio's Senate Response.

1   actual facts about Proctorio described herein. But in particular, he knows or should know

2   the types of information the company collects and does not collect from examinees and the

3   security measures the company uses to protect examinee information.[19]

4       52.     Mr. Johnson has researched the software with his peers. The Complaint

5   notes that Johnson is on a university subcommittee "tasked with investigating whether or

6   not the use of remote proctoring services such as Proctorio is in line with his university's

7   values." (Compl. ¶ 13). At least on the basis of this description, Mr. Johnson knows or

8   should know from his participation on the subcommittee that Proctorio makes no decisions

9   regarding what integrity features are available or when they are used, and that Proctorio

10  does not determine what constitutes academic dishonesty. Universities and teachers make

11  those calls. Moreover, Mr. Johnson has remained in both close and active connection with

12  others who oppose proctoring technology and seek to abolish it.[20]

13      53.     And Mr. Johnson has researched the software on his own. In violation of

14  his promises to Proctorio, Mr. Johnson accessed the Proctorio software code that is stored

15  in hidden folders upon download, and has both reviewed this material and published it on

16  the Internet. (*Id*. ¶ 14). Under the guise of software research, he admits to reviewing the

17  software to determine the data privacy features the company has in place and whether there

18  are any vulnerabilities that can put student information at risk. (Ex. B-3 at 16). For these

19  reasons, Mr. Johnson knows or should know that Proctorio does not obfuscate its software,

20

21  _____

    [19] For example, Proctorio's website has a privacy policy, a terms of service agreement,
22  and a Frequently Asked Questions page. *See* Proctorio | Privacy and Cookies, *available at*
    https://proctorio.com/privacy-policy; Proctorio | Terms of Service, *available at*
23  https://proctorio.com/terms; Proctorio | FAQ, *available at* https://proctorio.com/faq (all
    last viewed June 25, 2021). These publications together describe the security measures
24  Proctorio takes and the information the company collects. Even more to the point,
    Proctorio's Senate response letter has a detailed description of each type of information
25  the company collects, *see* Ex. J at 4-10, and how it is secured, *id*. at 18-19.

26  [20] In particular, Mr. Johnson has remained in close and active contact with Ian Linkletter,
    who has also unlawfully disclosed Proctorio's proprietary content. Mr. Johnson has re-
27  tweeted and supported Mr. Linkletter to help him evade a restraining order, *see* Ex. B-2 at
    37) and make misleading statements about Proctorio's technology, *see id*. at 30. Mr.
28  Johnson is also in contact with others who oppose Proctorio's software and have made
    disparaging statements about the company and its technology through online blogging.

that Proctorio has no possible way to surreptitiously invade student computers and access sensitive information, and that Proctorio does not even have the technical ability to see, collect, transmit, or in any way manipulate student information.  Any good-faith research into the product would make these actual facts abundantly clear.

### Mr. Johnson Has Made Numerous False Public Statements About Proctorio & Its Product with Knowledge or Reckless Disregard of Falsity of Those Statements

54.     Unfortunately, Mr. Johnson's knowledge about Proctorio has not stopped him from making false public statements about the company and its product.  Indeed, Mr. Johnson has made and amplified each of his statements either knowing that they are false or with a reckless disregard of their falsity.

55.     Many false statements were made on September 7 and 11, 2020.  (*See id*. at 25-31).  But importantly, Mr. Johnson repeated and amplified these statements on at least three occasions.  First, on September 14, 2020.  (*See id*. at 23-24).  Second, on October 23, 2020—when he expressly referred to the statements as his "research into the platform." (*Id*. at 15).  And third, when he "pinned" the October 23 statement to the top of his Twitter homepage.  (Ex. B-1 at 2).  By pinning the October 23 statement, Mr. Johnson ensured that his false and misleading "research into the platform" would be the first statements that visitors see.

56.     This initial set of false statements fall into three categories.  First, false statements about Proctorio's security and privacy features.  These include, but are not limited to, Mr. Johnson's published statements that:

   a. "Proctorio seemingly routes ALL of your chrome browsing traffic through their servers and hides it from any tools" and that the software "ALWAYS does this if it's installed."  (*See* Ex. B-3 at 30).

   b. "It's seemingly impossible to tell when the proctorio [*sic*] extension is collecting data from your browser and when it's not" and that Proctorio "has all permissions whenever installed and could be logging data 24/7."  (*Id*.)

   c. "[I]f you open Charles/Burp with the proctorio [*sic*] extension installed, you

CROWELL & MORING LLP
ATTORNEYS AT LAW

1    won't see ANY of your network traffic from chrome [*sic*]. I can't see where

2    it's sending data because no DevTools." (*Id.*)

3        d.   Proctorio employees "will spy on you" "if you raise enough flags to the

4            algorithm during the exam" and that they "have full access to the feed of

5            students' exams." (*Id.* at 32).

6    Mr. Johnson's intent in making these statements was to create doubt and distrust in

7    Proctorio's data privacy and security features.  Yet, for the reasons described above, Mr.

8    Johnson knows that these statements are false.

9        57.    The second category is false statements about Proctorio's ability to make

10   platform decisions that impact students taking exams.  These include, but are not limited to,

11   Mr. Johnson's public statements that:

12       a.   "Proctorio looks for & flags" student activity during exams.  (*Id.* at 31-32).

13       b.   Proctorio "use[s] these metrics to compare you to other students in the

14          class."  (*Id.* at 31).

15       c.   Proctorio "forc[es] a student to have a private quiet room with a quality

16          webcam, microphone, and stable internet connection."  (*Id.* at 29).

17   The intent of these statements was to pin blame onto Proctorio for the use of the software

18   despite knowing that solely universities and faculty members—not Proctorio—make these

19   decisions and control their use of the software.

20       58.    The final category includes false or misleading statements that Mr. Johnson

21   supported by publishing Proctorio's copyrighted material.  Indeed, every time Mr. Johnson

22   published Proctorio's copyrighted content, he did so in furtherance of a claim that he either

23   knew was false or that he made in reckless disregard of its falsity.

24       a.   **The "list of metrics" tweet (Ex. B-3 at 31-32):**  Misleading the public

25          about the Proctorio product's functionality, on September 7, 2020, Mr.

26          Johnson published an incomplete and misleading list of activities that the

27          software can flag if the school or faculty selects that option and the behavior

28          meets the school or faculty's threshold for evincing unethical conduct.  The

CROWELL & MORING LLP
ATTORNEYS AT LAW

list is both incomplete (it only includes those metrics that Mr. Johnson mischaracterizes and presents as the most invasive) and misleading (it strongly implies that Proctorio both controls these metrics and has access to the underlying data, and it inaccurately implies that Proctorio monitors "eye movement").  Mr. Johnson knew or reasonably should have known the falsity of this tweet.

b. **The "[Proctorio] use[s] these metrics" tweet (*Id.* at 31):**  In the next tweet, Mr. Johnson again published a list of activities that was both incomplete and misleading for the same reasons as described above in paragraph 58(a).

c. **The "Your attempt can be terminated" tweet (*Id.*):**  In a third tweet, Mr. Johnson again published an incomplete and misleading list, this time of activities that either can automatically occur due to technological failures (*i.e.*, internet disconnection) or due to the school or faculty selecting the option and the behavior meeting the school or faculty's threshold for evincing unethical conduct (*i.e.*, switching proxies).  The list is both incomplete (it only includes those activities that Mr. Johnson mischaracterizes and presents as the most invasive and punitive) and misleading (it strongly implies that Proctorio both controls these metrics and has access to the underlying data, and also because it strongly implies that Proctorio categorizes students who are flagged for unethical conduct and who are flagged for technical failures in the same fashion).

d. **The "you will have to scan your room" tweet (*Id.*):**  And in a fourth tweet that infringes Proctorio's copyrighted material and disparages Proctorio's software, Mr. Johnson published an image that documents the Proctorio software platform's user interface.  In this Tweet, Mr. Johnson stated that "Proctorio compiles" room footage "into a street-view like 360 image of your room/house that your professor can access and seemingly proctorio

33

[*sic*] 'agents' too." The infringed image, in combination with this statement, falsely states that Proctorio has consistent and highly sensitive access to the inside of student's private spaces and takes extra steps to invade student privacy even further.

e. **The "virtual machine" tweet (*Id.* at 28):** Four days later, on September 11, 2020, and as part of the same tweet thread, Mr. Johnson published a tweet that includes (1) a link to a page that includes proprietary software code describing the virtual machines that the software disables access to; and (2) directions for how to access that same information on a local computer. This tweet is false because it supports Mr. Johnson's effort through this thread to suggest that he is completing factual research about the technology, when in reality he is posting information to harm the company and its product. More fundamentally, this tweet provides the public with a roadmap of how to circumvent and weaken Proctorio's product and to circumvent the important public interests that the software protects, as Mr. Johnson well knows.

59. Mr. Johnson made numerous other false statements about Proctorio between September 2020 and March 2021. Despite claiming to be a security researcher and knowing the difference between obfuscation and minification, Mr. Johnson repeatedly made false accusations that Proctorio obfuscated code and violated Google policies. Such claims were made on September 22,[21] September 25,[22] October 5,[23] November 6,[24]

[21] *See* Ex. B-3 at 22 (After pointing to the Google Chrome Store policy against obfuscation, stating: "Seeing as Proctorio is trying to censor those who are trying to figure out what the extension's detailed functionality is, this seems to be in direct violation of @ChromiumDev's Program Policies.").

[22] *Id.* at 21 (Stating that Proctorio "obfuscates the code for their own extension").

[23] *Id.* at 18 ("You say Proctorio believes in open-source projects, but obfuscate your own product.").

[24] *Id.* at 13 ("[T]hey [Proctorio] actually do use obfuscation, jscrambler to be exact, effectively violating the Google developer guidelines.").

34

1    November 23,[25] and March 16.[26]  Mr. Johnson's other false statements impugned the

2    veracity of Proctorio's data security measures.  For example, Mr. Johnson stated that

3    Proctorio was lying about its "zero-knowledge encryption" of student data on September

4    7,[27] December 21,[28] February 19,[29] and March 31.[30]  He made these false statements even

5    after, on September 22, 2020, admitting that he does not have an adequate background to

6    make such statements about Proctorio's security technology.[31]

7            60.      The false statements, finally, were not just targeted against the company.

8    Mr. Johnson has consistently made false statements about an online interaction Mr. Olsen

9    had with a student where he clarified the omissions of the student, and the student

10   acknowledged that the omissions were material.[32]  And Mr. Johnson and his team have

11   directed false, misleading, defamatory, and outright outrageous statements at Proctorio's

12   CEO Mr. Olsen as well—including vile, false, and defamatory suggestions that Mr. Olsen

13
14   [25] *Id*. at 4 (When using the Google Chrome Store's "own language back at" Proctorio,
     cites to the provision that "Proctorio explicitly agreed to not obfuscate code or conceal
     functionality of their extension").

15   [26] Ex. B-1 at 17-18 (Asking Google "why aren't the rules enforced for @proctorio? An
16   extension which obfuscates nearly all of their code…").

17   [27] Ex. B-3 at 29-30 ("They claim that they use 'zero-knowledge enncription [sic]' and
     don't have access to data . . . However, I'm not sure how true this statement is when
     there's clearly a way for 'agents' to view exam streams, when the CEO posts a student's
18   chat logs publicly to attack him, and when they put a law suit against someone linking
     tutorial videos").

19   [28] Ex. B-2 at 38-39 (Stating that "'[z]ero-knowledge encryption' is a horrible way to
20   describe what [Proctorio's security] actually is.  It's not.").

     [29] *Id*. at 7 ("Stop with the bullshit 'zero-knowledge encryption' talk").
21
22   [30] Ex. B-1 at 14 (Re-tweeting a blog post by a classmate that purports to analyze the zero-
     knowledge encryption technology, and indicating that the technology allows for
     infiltration when encryption is supposed to be present).

23   [31] Ex. B-3 at 23 ("From the looks of it, the only thing seemingly 'zero-knowledge about
     the encryption is how Proctorio integrated it… However, I won't go into detail on that.
24   I'm sure others who know more than I do will do a better job explaining that aspect.").
     No actual expert has taken up Mr. Johnson's offer to discredit and attack the zero-
25   knowledge encryption technology because it is credible, effective, and secure.  This
     apparently did not stop Mr. Johnson from speaking publicly (and falsely) on the subject.

26   [32] This is the so-called student chat scandal, where a student accused Proctorio's chat
     agent of being insufficiently responsive, and Mr. Olsen identified omissions in the
27   statements that student made and publicized.  *See* Ex. B-3 at 29-30 (where Mr. Johnson
     falsely states that Mr. Olsen "post[ed] a student's chat logs publicly to attack him").
28

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

has a prurient interest in children.  Exs. F, G.  Mr. Johnson's counsel even went so far to falsely assert outside of this litigation, on behalf of Mr. Johnson, as his agent, that Proctorio engaged in "a form of fraud."[33]

### Mr. Johnson Violated His Promise Not to Access & Disclose Proctorio's Software Platform & Services

61.     Attached herein is the executed agreement between Miami University-Oxford and Proctorio.  *See* Ex. K (the "Agreement").

62.     Proctorio directly licenses its software to colleges and universities, and obligates the school to have student end-users agree to "substantively the same or greater protections for [Proctorio's] Confidential Information and the Application IP."[34]  (*Id.* at 3).  Proctorio is a direct and intended third-party beneficiary of such agreements.  Thus, pursuant to the Agreement, end-users may not "copy or duplicate" any of Proctorio's proprietary source code, and also may not:

> "decompile, disassemble, reverse engineer *or otherwise attempt to obtain or perceive the source code from which any software component of any of the*

---

[33] *See* "Miami student faces legal battle against Proctorio," *Oxford Observer* (May 14, 2021 (herein "Oxford Observer") ("EFF attorneys Cara Gagliano and Hannah Zhao took up the lawsuit on Johnson's behalf. After reviewing the case details, Gagliano sided with Johnson's argument, and even went so far as to view Proctorio's actions as 'a form of fraud.'"), *available at* https://oxfordobserver.org/5451/miami/miami-student-faces-legal-battle-against-proctorio/ (last viewed June 25, 2021).  Proctorio reserves all the rights regarding Ms. Gagliano's potentially-tortious allegations, which appear to have been made from California about a company in Arizona.  Under either state's laws, Ms. Gagliano's statement may be actionable.  "Courts and commentators generally agree that absolute litigation privileges do not protect statements made to the media." *Susan A. v. Cty. of Sonoma*, 2 Cal. App. 4th 88, 96 n.7 (1991); *Green Acres Tr. v. London*, 141 Ariz. 609, 615 (1984) ("The press conference simply did not enhance the judicial function and no privileged occasion arose.  Accordingly, the lawyer defendants were not absolutely privileged to publish the oral and written communications to the newspaper reporter.").

[34] The Agreement defines "Application IP" as the Application Service, the Application Documentation, and any and all intellectual property provided to Customer (and/or any applicable Authorized End Users) in connection with the foregoing."  Ex. K at 2.  "Authorized End Users" is defined to expressly include student users.  *Id*.  "Confidential Information" is defined to include "all written or oral information, disclosed by either Party to the other . . . that has been identified as confidential or that by the nature of the circumstances surrounding disclosure ought reasonably to be treated as confidential."  *Id*.  This definition also expressly encompasses "Application Documentation," which is defined as "text and/or graphical documentation, whether in electronic or printed format, that describe[s] the features, functions and operation" of the Proctorio software.  *Id*.

36

*Application IP is compiled or interpreted*, or apply any other process or procedure to derive the source code of any software included in the Application IP, or attempt to do any of the foregoing."

(*Id*. at 1) (emphasis added).  The Agreement further states that the school, and thus also the end-user, must "acknowledge[] that nothing in this Agreement will be construed to grant [it or the end-user] any right to obtain or use such source code." (*Id*.)

63.     Mr. Johnson admits to taking classes that use Proctorio's software, and that he has downloaded Proctorio's software onto his local computer. (*See* Compl. ¶¶ 12, 29). Thus, pursuant to the Agreement, Mr. Johnson is prohibited from obtaining, copying, or publicizing Proctorio's source code and associated materials pursuant to the agreement that he entered with Miami University-Oxford.

64.     On information and belief, Mr. Johnson did in fact enter into an end-user agreement with Miami University-Oxford, as required by the Agreement.

65.     At some date prior to September 7, 2020, Mr. Johnson breached the end-user agreement.  He breached the agreement in three specific ways.  First, he pulled Proctorio's hidden software from the depths of his computer, in violation of the promise not to obtain the source code and accompanying material.  Second, he copied Proctorio's software from its hidden location so that he could then disclose it on the Internet, in violation of the promise not to copy.  And third, he published the software onto three Internet platforms—Twitter, Pastebin, and GitHub—in violation of the promise to protect the secrecy of such confidential information and in furtherance of the false statements and tortious activities set forth herein.

66.     The specific materials that Mr. Johnson obtained and published in violation of his promise to Proctorio are those same materials he identifies in the Complaint. Namely, the language files and JavaScript files that are installed onto his local computer, and the platform that is built upon the software (the "Copyrighted Material").  Mr. Johnson also stated that he obtained and reviewed other components of Proctorio's proprietary and confidential software, though he did not disclose what other components.  (*See* Ex. B-3 at

CROWELL & MORING LLP
ATTORNEYS AT LAW

37

29).[35]  This was in violation of Mr. Johnson's promise to Proctorio as well.

**Mr. Johnson Did Not Fairly Use Proctorio's Copyrights**

67.     Moreover, by collecting, copying, reproducing, publishing and distributing the Copyrighted Material and other software in violation of his license to use the technology, Mr. Johnson violated Proctorio's copyrights in the same material as well. Proctorio has registered the source code for its software product with the copyright office. (*See* Ex. L) (Registration No. TXu 2-252-620).

68.     Mr. Johnson has admitted that Proctorio has a copyright in these materials. All that Mr. Johnson contends is that his use of the materials was fair.  (Compl. ¶¶ 22-27). But this is not accurate.

69.     His use of the Copyrighted Material does not contribute to his criticism. Mr. Johnson's (good-faith and bad-faith) criticism engaged with how the software impacts student morale, whether it treats racially-diverse students and students with disabilities differently, and whether it has adequate security measures in place.  Disclosing the Copyrighted Material does not contribute to or impact these criticisms.  The literal proximity of the Copyright Material to these criticisms, and Mr. Johnson's post-hoc litigation justification that they are part of the criticism, does not make it so.  To be fair use as part of his criticism, there needs to be *some* explanation for how the disclosure relates to the criticism, and Mr. Johnson has failed to do that.

70.     His use of the Copyrighted Material is not for an educational purpose. Apart from referring to the disclosure as "educational" on a number of occasions, there is nothing in the disclosures that elucidates the educational intent or impact.  If the educational purpose was to help students understand how the software actually functions, then some explanation of the functionality along with the literal disclosure would have been necessary.

71.     Instead, Mr. Johnson's disclosure is classic infringement.  He has taken and

---

[35] In this tweet, Johnson stated: "End of thread *for now*, but I will update *as I come across more information*." (emphasis added).

CROWELL & MORING LLP
ATTORNEYS AT LAW

disclosed all of the code that is needed for a student to use a virtual machine to circumvent the technology and cheat on an exam. He has disclosed a quantitatively and qualitatively significant part of the copyrighted code, all of which is highly creative. He has presented the code solely to disclose its literal contents and without any modifications or changes made to it. He has presented the copyrighted material solely in furtherance of false and misleading statements, and in bad faith, with the purpose to ultimately destroy the market for the very same copyrighted material. And he has completed these disclosures in order to, in short, try to end Proctorio and to profit personally. Reproducing and otherwise using copyrighted material in furtherance of false and misleading statements, in bad faith, cannot be fair use.

72. Legal and policy rationales to promote speech routinely give way where the speech is false or misleading. This is precisely why legal causes of action exist to prohibit false and misleading statements and have been recognized by courts and legislators for hundreds of years, dating back to British common law. For the same reasons, the legal and policy rationales relating to fair use must give way where copyrighted content is used in furtherance of illegal, false and misleading speech.

### Mr. Johnson's Conduct Has Injured Proctorio, While Mr. Johnson Filed This Lawsuit Despite Having No Injury or Damages

73. Proctorio is here because Mr. Johnson's conduct has caused it real business injuries. Indeed, but for Mr. Johnson's false statements about Proctorio, the company would be in a stronger business position with additional contracts in place and a substantially more secure public reputation.

74. Proctorio's experience with the University of Illinois is illustrative of the wider harm Mr. Johnson has caused. Before Mr. Johnson made his false public statements, Proctorio was in productive business conversations with the University of Illinois to enter a multi-year contractual agreement, likely worth millions of dollars. However, after Mr. Johnson made his false public statements, and due to the statements and their dissemination, the University of Illinois has declined to further extend its contract.

CROWELL & MORING LLP
ATTORNEYS AT LAW

75.     Another example is Miami University, where Mr. Johnson has an active practice of circulating materials encompassing his false and misleading statements with the intent to cause the school to cancel its license with Proctorio.  The circulations have had a negative public impact on Proctorio's reputation.  They have also made it more difficult for Proctorio to hold the present business relationship with Miami University, and have constrained the Company's ability to offer additional solutions to the school, too.

76.     Mr. Johnson's publication of private and sensitive materials has put the company and its customers in difficult business and legal circumstances.  Mr. Johnson has sought information about Proctorio from colleges and universities across North America via Freedom of Information Act ("FOIA") and other statutory public records requests.  This is perfectly valid, except that in several of these information productions, Mr. Johnson has received materials that he knows should not have been published due to their confidential and sensitive nature (*e.g.*, faculty access credentials).  Indeed, when such information has been published, Proctorio has tried to notify the university of the accidental disclosure and has tried to protect the integrity of the material.

77.     Despite knowing the sensitive nature of the accidentally released material, Mr. Johnson has published this content online.  In at least one circumstance, this has led to third-party access to highly sensitive software areas of the platform.  In other words, Mr. Johnson's publication of materials he knew should never have been provided to him have allowed unknown persons to access Proctorio's system.

78.     This has both put the contract between Proctorio and the school at risk, and has put at potential risk of publication the confidential information that only the school can access.  This and similarly reckless publications of materials that Mr. Johnson knows he should not have access to has caused serious business and financial harm, and has created threats to the exposure of sensitive personal information.

79.     When Proctorio has taken steps to mitigate the damage caused by the publication of sensitive information, Mr. Johnson has responded by falsely accusing the company of spying on him and, even worse, by placing company employees at risk of

40

1  public attack. In one particular circumstance, he published the name and business title of a
2  Proctorio employee online. This led in very little time to the employee being harassed
3  online by numerous anonymous persons ("doxing"). The employee was forced to change
4  and/or delete many of her online profiles due to the doxing, and remains concerned moving
5  forward about similar threats from Mr. Johnson and those associated with him.

6      80.    The false statements have also led to substantial false negative publicity
7  about Proctorio and its leadership. Because of Mr. Johnson's public crusade against
8  Proctorio, the company has been referred to as "racist" and an "enemy of students," and its
9  products called "spyware." Moreover, due to Mr. Johnson, Proctorio CEO Mr. Olsen has
10  been referred to as "a creep," as hating students, and as "a pedophile." None of this is
11  accurate or true. Proctorio is highly transparent about and fully discloses its products'
12  functionality. The products' functionality is reasonable and necessary to achieve the
13  products' purpose and to protect important public interests. Proctorio and Mr. Olsen care
14  deeply about students and the legitimacy and stability of educational institutions.

15      81.    The defamatory references caused by Mr. Johnson are categorically unfair,
16  inaccurate and untrue. These are gravely serious, highly damaging accusations that have
17  caused the company substantial business injury. The company, for example, has been told
18  it cannot attend trade events anymore that it had previously attended for many years.
19  Potential customers are now profiling the company as untrustworthy and unreliable even
20  before Proctorio has an opportunity to introduce itself. As a result, Proctorio has been
21  forced to redirect resources from its core business operations and mission to respond to the
22  effects of Mr. Johnson's false and misleading statements about Proctorio. These are
23  enormously costly injuries.

24      82.    By contrast, Mr. Johnson has not suffered any legally cognizable damages
25  or injury. Mr. Johnson has brought a federal case against Proctorio, yet he has admitted
26  both in his civil pleading and on Twitter that he has no civil injury.

27      83.    All the material that Mr. Johnson hopes to publish is online, on either his
28  Twitter account or his GitHub account. Indeed, there is no material that he has sought to

CROWELL & MORING LLP
ATTORNEYS AT LAW

41

1  be published that is not presently publicly available through his account.

2        84.     Though Pastebin has taken down the materials, that is because Proctorio

3  filed an abuse claim—*not* a DMCA notice—on the basis of Johnson publishing material

4  that is not his on the website.

5        85.     The result is both absurd and highly frustrating.  Proctorio has been injured

6  by Mr. Johnson, and Mr. Johnson bears no actual injury and has incurred no damages.  Yet

7  Mr. Johnson has sued Proctorio.  Proctorio attempted to resolve Mr. Johnson's situation

8  without resorting to the courts, first through direct outreach to Mr. Johnson, then through

9  the statutorily-authorized DMCA process, then through conversations with his counsel.

10  Because Mr. Johnson and his counsel have expressed no willingness to resolve this dispute

11  despite repeated attempts, Proctorio regrettably must bring these Counterclaims.

**CLAIMS FOR RELIEF**

**Count 1**

**Trade Libel / Injurious Falsehood**

15        86.     Proctorio re-asserts, re-alleges, and incorporates each and every allegation

16  above as if fully set forth herein.

17        87.     Plaintiff's conduct as alleged above constitutes trade libel under Arizona

18  common law.

19        88.     Plaintiff maliciously and intentionally published injurious falsehoods

20  disparaging the quality and character of Proctorio's products and its senior management,

21  including but not limited to the statements made on Twitter identified above.  These false

22  statements include, but are not limited to, Mr. Johnson's statements cited in the

23  Counterclaims.

24        89.     On information and belief, Plaintiff made each of these statements

25  knowing they were false, or, in the alternative, with reckless disregard of their truth or

26  falsity.

27        90.     Plaintiff's repeated false statements about Proctorio, its products, and its

28  senior employees were made with the specific intent to harm Proctorio's pecuniary

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

interests.

91.     In the alternative, Plaintiff recognized (or should have recognized) that his repeated misrepresentations about Proctorio, its products, and its senior employees were likely to result in harm to Proctorio's pecuniary interests.

92.     Plaintiff's malicious and disparaging published statements have damaged the reputation and goodwill associated with Proctorio and its products.

93.     Proctorio has suffered pecuniary loss because of the publication of Plaintiff's false statements, and Proctorio is thus entitled to damages for Plaintiff's tortious conduct.

## Count 2

### Breach of Contract

94.     Proctorio re-asserts, re-alleges, and incorporates each and every allegation above as if fully set forth herein.

95.     Pursuant to Proctorio's executed agreement with Plaintiff's university (Miami University-Oxford), Plaintiff was required to agree to refrain from "copy[ing] or duplicat[ing]" any of Proctorio's proprietary source code.

96.     Plaintiff was also required to agree to refrain from any attempt to "decompile, disassemble, reverse engineer or otherwise attempt to obtain or perceive the source code from which any software component of any of the Application IP is compiled or interpreted, or apply any other process or procedure to derive the source code of any software included in the Application IP, or attempt to do any of the foregoing."

97.     Proctorio was the clear intended beneficiary of each of these contract terms.

98.     Agreement to these contractual terms was (and remains) a precondition for any end-user, including Plaintiff, to access Proctorio's software.

99.     On information and belief, Plaintiff has taken classes that use Proctorio's software.  Moreover, Plaintiff admits that he has downloaded Proctorio's software onto his local computer.  (See Compl. ¶¶ 12, 29).  Thus, on information and belief, Plaintiff did in fact enter into an end-user agreement with Miami University-Oxford, as required by

Proctorio's agreement with that institution.[36]

100.    Plaintiff's public statements suggest that he is well aware of Proctorio's terms of service, but that he believes they just "don't matter."[37]

101.    Thus, on information and belief, Plaintiff explicitly agreed to refrain from copying, duplicating, or publicizing Proctorio's source code and associated materials pursuant to the end-user agreement that he entered with Miami University-Oxford.

102.    At some date prior to September 7, 2020, Plaintiff breached those contractual promises, in at least three ways:

     a.  First, Plaintiff pulled Proctorio's hidden software from the depths of his computer, in violation of the promise not to obtain the source code and accompanying material.

     b.  Second, Plaintiff copied Proctorio's software from its hidden location specifically with the intention of disclosing it on the Internet, in violation of his promise not to copy.

     c.  Third, Plaintiff published the software onto at least three Internet platforms—Twitter, Pastebin, and GitHub—in violation of the promise to protect the secrecy of such confidential information.

103.    The specific materials that Plaintiff obtained and published in violation of his promise to Proctorio are those same materials he identifies in the Complaint—namely, the language files and JavaScript files that he installed onto his local computer.

104.    Plaintiff has also stated that he obtained and reviewed other components of Proctorio's proprietary and confidential software, but he did not specifically identify the software components he obtained.  (See Ex. B-3 at 29).  On information and belief, this act

---

[36] Proctorio's counsel has requested this documentation from Miami University's legal department, but that office is understandably reluctant to disclose that information short of a subpoena, and certainly before a protective order has been entered.

[37] *See* "Oxford Observer," *supra* n. 33 (quoting Mr. Johnson: "Proctorio's terms of service don't matter until you actually use the software and click the checkbox before you take an exam.").

CROWELL & MORING LLP
ATTORNEYS AT LAW

CROWELL & MORING LLP
ATTORNEYS AT LAW

1  also violated Plaintiff's contractual promises specifically intended to benefit Proctorio.

2      105.    Even after being informed that his conduct violated these contractual

3  agreements, Plaintiff refused to remove the infringing posts (and, in fact, re-tweeted them).

4      106.    As a result of Plaintiff's contract breaches, Proctorio has been significantly

5  damaged, including, *inter alia*, through lost profits, reputational damage, and the more

6  fundamental injury of Plaintiff's conduct to intentionally provide the public with means of

7  circumventing the effectiveness of Proctorio's product—exactly the kind of harms that

8  these contractual terms are designed to prevent.

9      107.    Because this count arises out of contract, pursuant to A.R.S. § 12-341.01,

10  Proctorio is also entitled to an award of its reasonable attorneys' fees.

11                           **Count 3**

12                    **Copyright Infringement**

13     108.    Proctorio re-asserts, re-alleges, and incorporates each and every allegation

14  above as if fully set forth herein.

15     109.    Proctorio owns the copyright for the Copyrighted Material.

16     110.    Proctorio has registered the Copyrighted Material with the United States

17  Copyright Office.  A true and correct copy of the certificate of this federal copyright

18  registration, which bears Registration Number TXu-2-252-620, is attached as **Exhibit L**.

19     111.    Counterdefendant freely admits, both on Twitter and in his complaint in

20  the instant action, that he copied Proctorio's Copyrighted Material.

21     112.    Counterdefendant willfully published Proctorio's Copyrighted Material.

22  Even after he was made aware of his infringing conduct by reviewing Proctorio's DMCA

23  notices, Counterdefendant continued to willfully publish Proctorio's Copyrighted

24  Material.  Indeed, even after platforms had removed his infringing content,

25  Counterdefendant circumvented those platforms and continued to willfully publish

26  Proctorio's Copyrighted Material on different platforms.  As of the date of this filing, on

27  information and belief, Counterdefendant has still not removed his public posts containing

28  Proctorio's Copyrighted Material from certain platforms.

1    113.    Counterdefendant willfully induced others to publish and use Proctorio's

2    Copyrighted Material.  Even after he was made aware of his infringing conduct by

3    reviewing Proctorio's DMCA notices, Counterdefendant continued to willfully induce

4    others to publish and use Proctorio's Copyrighted Material.

5    114.    The Copyright Act authorizes a damages award of up to $150,000 per

6    work infringed due to Counterdefendant's willful infringement.  *See* 17 U.S.C. § 504(c).

7    Proctorio is entitled to an award of damages in that amount, or another amount to be

8    proved at trial.

9    115.    The Copyright Act authorizes the Court to enjoin Counterdefendant's

10   continued publication of Proctorio's Copyrighted Material.  Because Counterdefendant

11   admits that he would persist in his infringing conduct but for Proctorio's assertion of legal

12   rights (*see, e.g.*, Compl. ¶ 50), Proctorio requests that the Court issue such an injunction.

13   116.    The Copyright Act authorizes the Court to award attorneys' fees and

14   litigation costs.  *See* 17 U.S.C. § 505.

15   117.    Despite multiple attempts to amicably resolve the conduct short of

16   litigation, Counterdefendant refused to stop infringing Proctorio's Copyrighted Material.

17   *See, e.g.*, Compl. ¶ 28 (Proctorio's CEO directly attempts to resolve the matter); *id.* at ¶¶

18   37-41 (Proctorio's counsel attempts to resolve the matter).  As such, Proctorio is entitled

19   to an award of its attorneys' fees and litigation costs.

20                              **Count 4**

21   **Tortious Interference with Contract and/or Business Expectancy**

22   118.    Proctorio re-asserts, re-alleges, and incorporates each and every allegation

23   above as if fully set forth herein.

24   119.    For years, Proctorio has valid contractual relationships and/or valid

25   business expectancies with third parties, including universities like Miami University, the

26   University of British Columbia, and the University of Illinois.

27   120.    Counterdefendant knew that Proctorio had these valid contractual

28   relationships and/or business expectancies with universities across the country—including

CROWELL & MORING LLP
ATTORNEYS AT LAW

46

1    his own.  *See supra, e.g.*, ¶ 19.  Indeed, Counterdefendant's pleading in the instant case

2    references some of these relationships.

3         121.    Notwithstanding this knowledge—and, indeed, specifically because he

4    knew of these relationships and wished to "abolish online proctoring"—Counterdefendant

5    actively induced universities, including his own, to terminate their current and/or

6    prospective business relationships with Proctorio.  Acting with an improper motive and to

7    advance his own personal interests through a campaign of false statements on Twitter and

8    via other media outlets, Counterdefendant (and his allies) acted improperly.

9         122.    Counterdefendant acted in concert with others, including but not limited to

10   Mr. Ian Linkletter, to intentionally spread misinformation about Proctorio, its products, and

11   its senior employees in a specific attempt to induce educational institutions to terminate

12   their current and/or prospective business relationships with Proctorio.  To spread these

13   false statements, Counterdefendant also acted in concert with sympathetic organizations

14   like "Fight for the Future."

15        123.    Counterdefendant's campaign of lies worked.  As he hoped it would be,

16   Proctorio has been damaged through serious disruptions with both its ongoing and

17   prospective business relationships.  As a result of the false statements that

18   Counterdefendant and his co-tortfeasors publicized over several months, certain

19   educational institutions have narrowed, terminated, or refused to renew contracts with

20   Proctorio.  Others have raised concerns about these false allegations during the request-for-

21   proposals or contracting processes.  Still others have announced total bans on remote

22   proctoring technology of any kind.

23                              **DEMAND FOR JURY**

24        Counterclaimant Proctorio demands a trial by jury of all issues so triable.

25                              **PRAYER FOR RELIEF**

26        WHEREFORE, Defendant Proctorio, Inc. prays, as follows, that:

27   1.   Mr. Johnson take nothing by reason of his complaint;

28   2.   The complaint against Proctorio be dismissed in its entirety;

CROWELL & MORING LLP
ATTORNEYS AT LAW

1       3.       Proctorio be awarded damages in an amount to be determined at trial;

2       4.       The Court enjoin Mr. Johnson from engaging in further conduct that

3 infringes Proctorio's copyrighted material or unlawfully disparages Proctorio, its products,

4 or its senior executives;

5       5.       Proctorio be awarded its reasonable attorneys' fees and costs incurred; and

6       6.       The Court order such other and further relief as it deems just and proper.

Dated: **September 7, 2021**            Respectfully submitted,

By: _____

Justin D. Kingsolver
   JKingsolver@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: 202-624-2500

Gabriel M. Ramsey*
   GRamsey@crowell.com
Kristin Madigan*
   KMadigan@crowell.com
Kayvan M. Ghaffari*
   KGhaffari@crowell.com
Jacob Canter*
   JCanter@crowell.com
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: 415-986-2800

   *Admitted pro hac vice.*

*Attorneys for Defendant Proctorio, Inc.*

CROWELL & MORING LLP
ATTORNEYS AT LAW

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court E-Filing system, which sends notification of such filings to all registered participants.

By: */s/ Justin D. Kingsolver*

Justin D. Kingsolver

Attorney for Proctorio, Inc.

# EXHIBIT F





↑↓ **Erik Johnson Retweeted**

**Lia Holland** @liaholland · Mar 3   ···

Real talk: for an education, students must enter into a specific, unequal power dynamic. A dynamic that can be readily abused. Right now I guarantee you there are students being abused by authority figures using @proctorio.

Let the thought of that chill you. #BanEProctoring



---

🌐 **Fight for the Future** ✔ @fightftheftr · Mar 3

NEW: @Proctorio is worse than a proctology exam, and so is their creepy CEO, Mike Olsen. It's time to start calling this racist, ableist stalkerware what it is: MikeOlsenTeenageLapCam.com #InvestigateProctorio

Show this thread



---

💬      ↑↓ 4      ♡ 3      ↑

# EXHIBIT G

# PROCTORIO AND ITS CEO ARE WORSE THAN A PROCTOLOGY EXAM

 Hundreds of thousands of students around the world are fighting back against creepy e-proctoring app Proctorio and their equally creepy CEO, Mike Olsen.

Major universities like Columbia, Vanderbilt, Howard, and UT Austin, as well as major textbook companies like McGraw-Hill are ignoring student's real and substantiated concerns about the racism, ableism, privacy violations, abuses of power, and bad-spiritedness of Proctorio.

They're allying themselves with this guy, Mike Olsen.



Mike thinks that getting an education should be just like a proctology exam. It should include peeing in a cup, revealing intimate personal information, crying and cursing in front of an authority figure who holds your future in their hands, as well as having your lap area documented repeatedly and sent for analysis steeped in systemic racism and ableism.

But whereas proctology exams are medically important for certain folks over age 55, Mike wants everyone to endure Proctorio at age 18 (or younger), and his favorite part is making it all happen on camera.

This guy is raking in oodles of money by forcing teenagers to submit to an ineffective technology that may be more invasive and damaging than a doctor's finger up your anus. Some people, like racial justice and human rights organizations—as well as a coalition of Senators—are looking into Proctorio's bunk tech that may actually encourage cheating.

> SIGN THE PETITION
> AGAINST EPROCTORING                SIGN

Bummer for Mike, because he's all about teenagers being forced to film their laps and their living spaces for untrained and unsupervised professors, teaching assistants, and other authority figures. That's why he founded Proctorio, because some people in education are so worried about students cheating their way through an outdated and ineffective praxis that they will literally make young people film themselves for a spyware app.

The way proctoring apps work is so unclear to some professors that students report crying as they pee in cups on camera because they don't want to be flagged as "cheating."

Seems like that's just Mike's sort of thing.

> TELL MIKE HE'S CREEPY

But what Mike doesn't like is criticism. He's the sort of guy to hold a grudge. And boy, this middle-aged adult CEO has got it out for 18 year old Erik Johnson. Erik, a freshman at Ohio's Miami University posted some of Proctorio's code—data that's legal for anyone to see and share—on Twitter. Mike was SO bummed that Erik would dare to interrupt Mike's filming of teenage laps that he made his lawyers intimidate Twitter into taking Erik's posts down.

And there was that one time where another student said something mean about Mike's cams on Reddit. Mike wouldn't stand for it, so he logged into Proctorio's customer service database and posted private information about that student in the comments.

Sick burn, Mike.

There's more, like Mike's SLAPP lawsuit against University of British Columbia educational technologist Ian Linkletter—and the fact that Proctorio uses racially biased facial recognition software. Mike gets real pissy when you call it that, though. He prefers "facial detection"—when in fact all facial analysis algorithms are imperfect, bunk, racist science that deserve no place in assessing who is a "cheater" when it comes to taking tests that might determine a young person's future.

Despite Mike's self-aggrandizing Twitter handle "@ArtfulHacker" (a characterization from a 1990s PC Magazine article that lives on only in every bio Mike writes for himself), we as digital rights experts can definitively state that Mike isn't 'artfully hacking' anything. He's creepy and Proctorio is too.

Every time we speak with someone who has encountered Mike Olsen, we learn about something else gross about him. Here's a partial list:

- Mike's shitty PR team really had to reach for Earth Day 2021—claiming responsibility for the reduced greenhouse gas emissions from pandemic shutdowns across the globe.
- Mike lying that Proctorio's facial recognition/analysis/whatever-he-calls-it-today tech isn't biased, even though it's proven to actually be a white-labeled racist technology that can't detect Black faces 57% of the time.
- Mike celebrating that articles about his tech being racist and "Orwellian" make him more money
- Mike belittling student's concerns: "It's hilarious, students pretending to care where their data goes. Whether they're cheating or not, I don't really care, but then they go out and they just say things. They don't do any research, they just make things up."
- Mike's "bizarre" SLAPP lawsuit against University of British Columbia educational technologist Ian Linkletter
- Mike's "freakishly disrespectful" posting of private chatlogs between a student and customer service on Reddit: ""If you're gonna lie bro... don't do it when the company clearly has an entire transcript of your conversation."
- Mike "absolutely inappropriate" abuse of Twitter's DMCA process to remove a student's critical tweets
- The peer-reviewed article on the "eugenic gaze" of Proctorio that Mike tried to get a journal to retract
- Mike's "insane" efforts to intimidate an 18-year-old critic of Proctorio via Twitter DM and by blocking his IP address from accessing Proctorio's platform
- Documents obtained under the freedom of information act that show, for example, that at least 408 different people at Texas Tech University may have access to Proctorio files of K-12 as well as university students using the technology that Mike tried to get removed from Muckrock
- Mike's big lie about who Proctorio's clients actually are on Proctorio's homepage in February 2021.
- Mike telling The Washington Post "We're the police."
- Mike telling Business Insider "I didn't get into proctoring to fix a pedagogical problem. I'm not a pedagogical expert, I don't know if there are better ways to do things."
- Mike trying to intimidate people who used the Freedom of Information Act to learn more about Proctorio at universities—creating an "enemy list" of critic names

Got a story about Mike and feel like sharing? Send it to us at team@fightforthefuture.org.

Built by:



For press inquiries, please contact us at:
(508) 474-5248 or press@fightforthefuture.org

This page was created by digital rights organization Fight for the Future, who are certain that proctoring apps should be banned, and that Mike would need his lawyers to hack him out of a paper bag.

You can contact us at team@fightforthefuture.org.