IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Erik Johnson, an individual,<br><br>        Plaintiff,<br>v.<br><br>Proctorio, Inc., a Delaware corporation,<br><br>        Defendant.<br><hr>Proctorio, Inc., a Delaware corporation,<br><br>        Counterclaimant,<br>v.<br><br>Erik Johnson, an individual,<br><br>        Counterdefendant. | Case No. Case No. 1:22-mc-91079<br>U.S. District Court for the District of Massachusetts<br><br>Case No. 2:21-cv-00691-DLR<br>U.S. District Court for the District of Arizona<br><br>**PROCTORIO INC.'S MEMORANDUM IN OPPOSITION OF FIGHT FOR THE FUTURE'S MOTION TO QUASH OR MODIFY SUBPOENA** |

On February 18, 2022, Fight for the Future, Inc. ("FFTF") filed a motion to quash or modify a subpoena ("Subpoena") dated November 23, 2021, served on FFTF by Proctorio, Inc. ("Proctorio"). *See* ECF Nos. 1-2. Proctorio issued the Subpoena in connection with litigation pending in the U.S. District Court for the District of Arizona involving a dispute between Erik Johnson and Proctorio. FFTF is not a party to the Arizona litigation, but is meaningfully connected to claims asserted by both Proctorio and Johnson, as the few documents that FFTF has produced show.

The Subpoena requests documents solely so that Proctorio can litigate its counterclaims and defenses and oppose Johnson's claims. Both Johnson and FFTF have admitted that they communicated about disputed issues in the litigation. Despite that, instead of complying with the Federal Rules of Civil Procedure and producing the documents it has in its possession, FFTF filed a motion that is long on accusations and short on law. FFTF has ignored its discovery obligations, even while Proctorio has already substantially narrowed its requests during meet-

1

and-confers. FFTF continues to purposefully impede Proctorio's efforts to defend against Johnson's baseless lawsuit and to prosecute its counterclaims. The law forbids this conduct. For the reasons below, Proctorio respectfully requests that the Court deny FFTF's motion.

## **FACTUAL BACKGROUND**

On April 21, 2021, Johnson sued Proctorio. Declaration of Jacob Canter ("Canter Decl.") ¶ 4; Ex. JC-A. In connection with Johnson posting Proctorio's copyrighted software code to various public websites, Johnson seeks a declaratory judgment of noninfringement and alleges a violation of 17 U.S.C. § 512(f). *See* Ex. JC-A ¶¶ 44-56. On July 2, 2021, Proctorio answered the Complaint and filed four counterclaims. Canter Decl. ¶ 5; Ex. JC-B.[1] Proctorio alleges that Johnson repeatedly infringed its copyrights, and that his conduct constitutes trade libel, contract breach, and tortious interference. Ex. JC-B ¶¶ 86-123. Proctorio's defenses include unclean hands. *Id*. at 14. Discovery in the Arizona Court is ongoing on all claims and all defenses.

In its Counterclaim, Proctorio alleges that Johnson worked in concert with FFTF to impugn the company's reputation and unlawfully interfere with Proctorio's ongoing and prospective contractual relationships. *See* Ex. JC-B. For example, Proctorio alleges that Johnson maliciously and intentionally published injurious falsehoods disparaging the quality and character of Proctorio's products and its senior management, including by Johnson reposting a defamatory FFTF website that falsely – and outrageously – accuses Proctorio's CEO of having a prurient interest in teenagers. *See* Ex. JC-B ¶ 80. And Proctorio alleges that Johnson knew about Proctorio's contractual relationships and business expectancies with universities and

---

[1] Proctorio filed a First Amended Counterclaim in September 2021 to correct a typographical error regarding the date of certain conduct alleged. Canter Decl. ¶ 5; Ex. JC-B. Counsel for Johnson notified Proctorio of this factual error. *Id*. The Amended Counterclaim makes no substantive changes to its allegations or causes of action, but Proctorio filed the amendment consistent with its duty to do so under Federal Rule of Civil Procedure 11(b)(3).

worked alongside FFTF to actively induce universities, including his own, to terminate their business relationships with Proctorio under false pretenses. *Id.* at ¶¶ 120-122.

Accordingly, on November 23, 2021, Proctorio served a third-party subpoena to FFTF seeking documents to support Proctorio's counterclaims and defenses, and also to oppose Johnson's claims. Canter Decl. ¶ 6; Ex. JC-C. The Subpoena has five document requests. *Id.* RFP No. 1 seeks communications between FFTF and Johnson. RFP No. 2 seeks communications between FFTF and the Electronic Frontier Foundation, the policy organization representing Johnson in this litigation. RFP No. 3 seeks communications between FFTF and Ian Linkletter, one of Johnson's co-conspirators. *See* Canter Decl. ¶ 9. RFP No. 4 seeks FFTF's documents and communications related to the proctoring software industry. RFP No. 5 seeks FFTF's documents and communication related to Proctorio.

After Proctorio issued the Subpoena, Johnson produced documents which confirm that Johnson and FFTF have worked in concert to disparage Proctorio and attack the company's business and reputation. For example, Proctorio received documents which show Johnson collaborating with FFTF to create a website unlawfully disparaging Proctorio's software and CEO. Canter Decl. ¶ 8. However, Johnson has also informed Proctorio that he "irretrievably deleted" other relevant communications with FFTF. Canter Decl. ¶ 10; Ex. JC-D (noting correspondence on the Signal messaging app with "Lia Holland" from "Fight for the Future" has been "irretrievably deleted" despite its relevance to the litigation). Thus, Proctorio must look elsewhere to discover the full extent of Johnson and FFTF concerted efforts.

On December 3, 2021, Proctorio received a response to the Subpoena from FFTF's counsel. Canter Decl. ¶ 11; Ex. JC-E. In it, FFTF flatly refused to produce any documents in response to any of the requests. *Id.*

3

In response, on January 12, 2022, Proctorio notified FFTF of Johnson's apparent spoliation of evidence, and also agreed to substantially limit all of five the requests as follows:

> **RFP No. 1** seeks ALL DOCUMENTS AND COMMUNICATIONS between FIGHT FOR THE FUTURE and PLAINTIFF RELATING TO DEFENDANT and the PROCTORING SOFTWARE INDUSTRY, excluding any privileged or publicly available materials, from January 1, 2018, to the present.
>
> **RFP No. 2** seeks DOCUMENTS AND COMMUNICATIONS between FIGHT FOR THE FUTURE and EFF RELATING TO DEFENDANT and the PROCTORING SOFTWARE INDUSTRY, excluding any privileged or publicly available materials, from January 1, 2018, to the present.
>
> **RFP No. 3** seeks ALL DOCUMENTS AND COMMUNICATIONS between FIGHT FOR THE FUTURE and LINKLETTER RELATING TO DEFENDANT and the PROCTORING SOFTWARE INDUSTRY, excluding any privileged or publicly available materials, from January 1, 2018, to the present.
>
> **RFP No. 4** seeks ALL DOCUMENTS AND COMMUNICATIONS RELATED TO the PROCTORING SOFTWARE INDUSTRY, excluding any privileged or publicly available materials, from January 1, 2018, to the present.
>
> **RFP No. 5** seeks ALL DOCUMENTS AND COMMUNICATIONS RELATED TO DEFENDANT, excluding any privileged or publicly available materials, from January 1, 2018, to the present.

Canter Decl. ¶ 12; Ex. JC-F.

In response, on February 3, 2022, counsel for FFTF agreed to produce three documents responsive to RFP No. 1, spanning nine pages in total, but refused to produce any other documents responsive to RFP No. 1 or to any of the other RFPs.[2]  Canter Decl. ¶ 13; Ex. JC-

---

[2] FFTF's counsel initially stated that these three documents constitute all documents and communications in FFTF's possession or control which are response to RFP No. 1. *See* Canter Decl. ¶ 13; Ex. JC-G.  The Memorandum of Law in Support of the Motion to Quash makes the same representation. *See* Dkt. No. 2 at 4 ("FFTF produced all correspondence in its possession between FFTF and Johnson, fulfilling Request (1)").  So does one of the declarations in support of the Memorandum of Law. *See* Speth Decl. ¶ 10 ("On February 3, 2022, FFTF produced all documents and communications between FFTF and Johnson in its possession, excluding privileged or publicly available materials, from January 1, 2018, to present.").  However, while preparing this opposition brief, counsel for Proctorio identified a document responsive to RFP No. (Continued…)

4

G. FFTF's February 3 letter repeated the same objections from the December 3 letter and raised no new substantive objections. *Id*.

In response, Proctorio *again* agreed to further limit the document requests. Canter Decl. ¶ 14; Ex. JC-H. Proctorio agreed to forego RFP Nos. 2, 3, and 4, and to limit the requests to only RFP Nos. 1 and 5. Proctorio further agreed to accept all produced documents under the "Attorneys' Eyes Only" ("AEO") designation contained in the Arizona litigation's protective order—meaning that only Proctorio's outside counsel would be able to see the documents, and that Proctorio employees could not. *Id*.

In response, FFTF's counsel came up with a brand-new objection: claiming that responding to Request No. 5 would require "substantial hours to searching for voluminous responsive documents." Canter Decl. ¶ 15; Ex. JC-I. FFTF therefore refused to produce any documents in response to the request. *Id.*

Given this, Proctorio's counsel stated that if FFTF would continue to refuse to cooperate in any fashion—refuse to acknowledge Proctorio's efforts to narrow the requests, and refuse to offer any alternative narrowing options—then it would file a motion to compel production of the materials. Canter Decl. ¶ 16; Ex. JC-J. On February 18, 2022, counsel for the parties held a conferral, pursuant to this Court's Rule 37.1, in anticipation of Proctorio's motion to compel. Canter Decl. ¶ 17. At the conferral, counsel for Proctorio yet again asked whether FFTF would consider any further narrowing proposals. *Id.* And counsel for Proctorio asked whether

---

1 that was produced by Mr. Johnson but that FFTF had not produced. Canter Decl. ¶ 18. Counsel for Proctorio accordingly notified counsel for FFTF of the potential factual error in both its motion to this Court and the accompanying declaration. *See* Canter Decl. ¶ 19; Ex. JC-K. Counsel for FFTF then identified the missing communication and agreed to produce it, acknowledging the factual error in the filings to this Court. *See id*.; *see also* FFTF 010. However, FFTF does not believe that it must amend its motion in order to withdraw the knowing false statement that it has made to this Court, and does not believe that it must amend the accompanying declaration to withdraw the knowing false statement in that exhibit either. *See* Ex. JC-K.

the "Attorneys' Eyes Only" designation to the documents would satisfy FFTF's purported confidentiality concerns. *Id*. Despite these narrowing proposals, FFTF's counsel stated that FFTF would absolutely refuse to produce any additional documents. *Id*. At the close of the conferral, counsel for Proctorio asked whether counsel for FFTF would accept service on FFTF's behalf when the motion to compel was served. Counsel for FFTF said that would be no problem.

However, before Proctorio could serve a motion to compel—indeed, on the very same day as the conferral—Proctorio received a motion to quash from FFTF. *Id*. This was the first time Proctorio had been informed about any potential motion to quash. In its motion to quash, FFTF stated still another brand-new reason for its refusal to produce documents, suggesting – for the first time – that the subpoena would "sweep in stories shared by students and their families about the harmful impacts of Proctorio's software." Dkt. No. 2 at 7; Canter Decl. ¶ 17.

## **LEGAL STANDARDS**

Rule 26 defines discovery rights and obligations of federal court litigants, and it provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The key phrase in this definition – "relevant to the subject matter involved in the pending action" – is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be at issue in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Rule 45, which governs non-party subpoenas, provides that a party who issues a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). "The party resisting discovery bears the burden of showing

that the subpoena imposes an undue burden, and it 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.'" *Kinectus v. Bumble Trading LLC*, 2021 WL 6066539 at *4 (D. Mass. Dec. 22, 2021).

While Rule 45 dictates that subpoenas cannot impose an undue burden, it does not stipulate that subpoenas cannot impose any burden. *See, e.g.*, *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, 2013 WL 6058483 at *7 (D. Mass. 2013) (distinguishing between *any* burden and *undue* burden); *In re Subpoena to TD Bank N.A.*, 2008 WL 5156612 (D. Me. 2008) ("[W]hile it is understandable to hire counsel to attend to [matters of subpoena compliance], that does not necessarily mean that an undue burden has been imposed").

## ARGUMENT

The Subpoena fully complies with federal standards.  It seeks nonprivileged documents that are relevant to Proctorio's counterclaims and defenses.  Its requests are proportional to the needs of the case, and Proctorio has taken further steps to reasonably narrow the Subpoena to further avoid any undue burden, including by agreeing to narrow its requests for production and to apply an AEO designation to all produced documents.  *See* Ex. JC-H.  Still, FFTF instigated this dispute.  The law does not merit quashing the Subpoena.

In its memorandum, FFTF specifically disputes RFP No. 5: "ALL DOCUMENTS AND COMMUNICATIONS RELATED TO DEFENDANT, excluding any privileged or publicly available materials, from January 1, 2018, to the present."[3] Dkt. No. 2 at 5.  Assuming that FFTF

---

[3] FFTF states the following as the portion of the Subpoena in dispute: "the request for 'all documents and communications related to [Proctorio].'"  It omits the rest of the request, which narrows the scope of production to exclude "any privileged or publicly available materials" and documents before January 1, 2018.

7

has fully complied with RFP No. 1, the sole question that remains is whether FFTF must produce documents in response to RFP No. 5, as Proctorio has agreed to withdraw the other requests. To challenge RFP No. 5, FFTF relies on an inapplicable standard and fails to establish that the Subpoena falls short of the requirements of Rule 45. FFTF omits important facts and posits unsubstantiated – and legally irrelevant – assertions about Proctorio's motives. The Subpoena seeks documents that are relevant and necessary for Proctorio's counterclaims and defenses, as well as reasonably calculated to avoid imposing any undue burden or expense on FFTF. Especially with its evident interest in the outcome of Johnson's lawsuit, FFTF cannot avoid its discovery obligations to respond to this lawful third-party subpoena, a common discovery tool that is not, as FFTF has framed in its press releases, an intimidation device. For the reasons herein, the court should deny FFTF's motion to quash or modify the Subpoena.

## I. PROCTORIO'S SUBPOENA TO FFTF SEEKS RELEVANT DOCUMENTS THAT ARE NECESSARY TO PROVE PROCTORIO'S COUNTERCLAIMS AND DEFENSES.

The Subpoena seeks information that is directly relevant to Proctorio's asserted counterclaims of trade libel and tortious interference, as well as Proctorio's unclean hands defense. For Proctorio to fully litigate these issues, FFTF must comply with the Subpoena as required by the Federal Rules of Civil Procedure.[4]

### A. Proctorio's Trade Libel Counterclaim

The Subpoena seeks documents that are directly relevant to Proctorio's trade libel counterclaim. A plaintiff stating a trade libel claim must prove that the defendant intentionally published an injurious falsehood disparaging the quality of their property or product, with

---

[4] Rule 26(b)(1) generally permits liberal discovery of relevant information. *Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.*, 2014 WL 12792496 at *2 (D. Mass. 2014) (citing *Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990)).

resulting pecuniary loss. *Allen v. Quest Online, LLC*, 2011 WL 4403674 at *8 (D. Ariz. 2011) (citing *Gee v. Pima Cnty.*, 126 Ariz. 116 (Ariz. App. 1980)). In trade libel cases, evidence of the defendant's intent to disparage the plaintiff's property or product is necessary to prevail. *See, e.g.*, *Morley v. Smith*, 309 Fed. App'x 103, 105 (9th Cir. 2009). FFTF's communications relating to Proctorio – which Johnson has already admitted to "irretrievably deleting" – will serve as this exact type of evidence, conveying Johnson's intent to disparage Proctorio.

The documents FFTF already produced show that Johnson and FFTF collaborated to disparage Proctorio. For example, FFTF 001-004 reveal a conversation between Johnson, his mother, and members of FFTF working on a publication directly condemning Proctorio. *See* Ex. JC-L at 1-4. Furthermore, FFTF 006 shows Johnson discussing Proctorio's technology and policies with FFTF. *See id.* at 8. Johnson tells FFTF to "let [him] know if [they'd] like to do anything with this info and whatever [he] can do to help," and FFTF encourages him to "take what [he has] and yell about it to try and get press/embarrass Proctorio." *Id.* Also, FFTF 010 confirms that Johnson worked with FFTF to prepare a website that accuses Proctorio's executive of having a prurient interest in teenagers. *See* Ex. JC-L at 10. Requiring compliance with the Subpoena is likely to lead to the discovery of more relevant material revealing Johnson and FFTF's joint intention to disparage and "embarrass Proctorio." *See* Ex. JC-L at 6.

**B. Proctorio's Tortious Interference Counterclaim**

Similarly, the documents requested by the Subpoena are relevant to Proctorio's counterclaim of tortious interference with contract and/or business expectancy. To be liable for tortious interference with a contract, the defendant's actions must be improper as to motive or means. *ABCDW LLC v. Banning*, 241 Ariz. 427 (Ariz. App. Div. 1, 2016) (citing *Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 11, ¶ 20, 106 P.3d 1020 (2005)). Comparably, liability for

tortious interference with business expectancy in Arizona requires that the interference was "both intentional and improper." *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012) (citing *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 387-88 (Ariz. 1985). Given the requirement to prove intent, the same analysis showing the relevance of the documents sought by the Subpoena for Proctorio's trade libel counterclaim applies.

Once again, the document already produced by FFTF support the relevance of Request No. 5. At FFTF 006, Johnson shares information relating to Proctorio's contractual relationship with the Lamar Consolidated Independent School District in Texas. *See* Ex. JC-L at 6. FFTF asked Johnson about the press that he had received following his retrieval of such information and encouraged Johnson to publicize it. *Id.* This exchange demonstrates just one example how Johnson and FFTF have collaborated to interfere with Proctorio's contracts. Requiring compliance with the Subpoena is likely to lead to the discovery of more relevant material revealing the collaboration between FFTF and Mr. Johnson on this front, and is likely to reveal further information relevant to Johnson's intent.

**C. Proctorio's Unclean Hands Defense**

Finally, the requested documents are relevant to Proctorio's affirmative defense of unclean hands.[5] The doctrine of unclean hands bars a claim for equitable relief (like that Johnson seeks) if the acts of bad faith or unconscionable conduct relate to the same activity that is the basis of the claim. *Sports Imaging of Arizona, L.L.C. v. 1993 CKC Trust*, 2008 WL 4448063 at *31 (Ariz. App. Div. 1, 2008) (citing *Barr v. Petzhold*, 77 Ariz. 399, 407 (Ariz. 1954)). To support an unclean hands defense, Proctorio needs to determine whether Johnson's conduct

---

[5] A party "should be able to explore facts which would support defenses to equitable relief, not only the defenses presently contained in the pleadings but also those which may be raised, especially the defense of unclean hands." *See Blount Intern., Ltd. v. Schuylkill Energy Resources, Inc.*, 124 F.R.D. 523, 527 (D. Mass. 1989).

10

(posting its copyrighted source code and later filing a lawsuit) was performed in bad faith. To make that determination, it is again necessary that Proctorio acquire documents speaking to Johnson's intent, this time with respect to his conduct leading up to his lawsuit.

Like with trade libel and tortious interference, FFTF has demonstrated that it has documents relevant to an unclean hands defense. The documents FFTF produced show communications between FFTF, Johnson, and Johnson's mother, depicting a collaboration between the parties months before Johnson filed suit. *See* Ex. JC-L at 1-4, 9. Accordingly, FFTF has shown that it communicated with Johnson leading up to his lawsuit – and any of those communications could reveal Johnson's true intentions. Moreover, FFTF's website (www.MikeOlsenTeenageLapCam.com) openly discusses Johnson as it disparages Proctorio and defames its senior-most executive with outrageous accusations of pedophilia—further implying a relationship between the two, the records of which are reasonably likely to speak to Johnson's bad faith. *See* Declaration of Sarah Gaudette in Support of Motion to Quash, ¶ 8, Ex. SG-A (depicting the website that FFTF created to disparage Proctorio); *see also* Ex. JC-L at 10.

In light of the importance of the documents requested, the Subpoena, which is reasonably calculated to not impose an undue burden as discussed below, should not be quashed.

## II. FFTF MISCHARACTERIZES PROCTORIO'S REASONABLY CALCULATED SUBPOENA AND APPLICABLE LAW.

The Subpoena complies with Rule 45 and is tailored to avoid imposing any undue burden or expense on FFTF, which has disregarded Proctorio's repeated attempts to compromise.[6] FFTF's motion relies on a misapplied First Amendment standard and unsubstantiated

---

[6] Proctorio notes again that FFTF's concern that RFP No. 5 will "sweep in stories shared by students and their families about the harmful impacts of Proctorio's software" was never offered or raised once by FFTF over the months of communications that occurred. The time to raise those concerns should have been before filing the motion, not afterwards. Proctorio has no interest in any such documents and would accept such a limitation.

11

insinuations about Proctorio's motives, rather than the clearly-established applicable law. Quashing a lawful subpoena requires more than bald allegations bound for a press release.

### A. No Heightened First Amendment Standard Applies.

FFTF mistakenly invokes a First Amendment privilege, which simply does not apply to the facts at hand. Its assertion of a heightened standard on the basis of *Perry v. Schwarzenegger* omits the critical fact that *Perry* was a suit **against state actors**, who have First Amendment obligations. 591 F.3d 1147, 1152-53 (9th Cir. 2010) (involving a lawsuit against "state officials" responsible for the enforcement of a ballot proposition and applying First Amendment privilege to the official proponents of the ballot proposition). Proctorio is a corporation, not a state actor, so the heightened standard in *Perry* does not apply. FFTF, a private 501(c)(4) organization, cannot use the First Amendment in this manner to escape a subpoena from another private actor.

In any event, FFTF fails to properly articulate the standard for whether its asserted privilege applies. *Perry* requires a two-step analysis. First, the party asserting the privilege "must demonstrate . . . a 'prima facie showing of arguable first amendment infringement.'" *Perry*, 519 F.3d at 1160. FFTF has not done so. Even if it had, FFTF cannot show the privilege applies if "the information sought through the [discovery] is rationally related to a compelling governmental interest . . . [and] the 'least restrictive means' of obtaining the desired information." *Id*. That is not the case here.

Notwithstanding the fact that Proctorio is not "the government," FFTF has provided insufficient proof to demonstrate a First Amendment infringement. The "*prima facie* showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members'

associational rights." *Id.* (internal citation omitted). FFTF baldly states that the Subpoena would chill future organizing efforts, but does not offer a shred of factual support to substantiate that claim. And even if FFTF met its burden on the first prong of the *Perry* analysis, the Subpoena is narrowly tailored, especially in light of Proctorio agreeing to remove RFP Nos. 2-4 and attach an AEO designation. *See* Ex. JC-H. *Perry* does not apply.[7]

### B. The Subpoena is Narrowly Tailored and Does Not Impose an Undue Burden.

Rule 45 governs this dispute, and the Subpoena meets its requirements. FFTF, as the party resisting the Subpoena, "bears the burden of showing that the subpoena imposes an undue burden, and it 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.'" *Green v. Cosby*, 152 F. Supp. 3d 31, 36 (D. Mass. 2015) (citing *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, 2013 WL 6058483 at *6) *see also Biological Processors of Alabama, Inc. v. N. Georgia Envtl. Servs., Inc.*, 2009 WL 1663102, at *1 (E.D. La. June 11, 2009) ("When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity…").

Not all burdens are "undue," and FFTF must prove with specificity why a commonplace civil subpoena seeking narrow categories of documents would impose an "undue burden." FFTF's motion fails to do so, ignoring the plain text of RFP No. 5 that limits the scope of

---

[7] FFTF's invocation of *Cusumano v. Microsoft Corp.* is inapposite, as the situation at hand is entirely distinct. In *Cusumano*, the court was concerned with the discovery of "notes, tape recordings and transcripts of interviews, and correspondence with interview subjects" related to a forthcoming book that would "hamstring not only the respondents' future research efforts but also those of similarly situated scholars." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("This loss of theoretical insight into the business world is of concern in and of itself."). Here, the scope and context of the Subpoena are distinguishable as Proctorio seeks documents that explicitly mention Proctorio rather than sensitive business information and research efforts. Proctorio simply wants to litigate the lawsuit against it.

13

production and Proctorio's efforts to narrow the requests further. Even more extensive burdens on non-parties have been found not to be "undue." In *Creative Machining and Molding Corporation v. CRC Polymer Systems, Inc.*, the court found that the non-party failed to show that a search of archived emails over a five-year period, limited to the email accounts of no more than four employee-custodians and using no more than ten search terms, would be unduly burdensome. *Creative Machining and Molding Corporation v. CRC Polymer Systems, Inc.*, 2018 WL 1440320 at *3 (D. Mass. Mar. 22, 2018). Here, Proctorio made a narrower request over a shorter time period, for which there would only be two necessary search terms ("Proctorio" and "Johnson"). Further, unlike the plaintiff in *CRC*, Proctorio made reasonable efforts to limit the burden of its discovery to FFTF, while FFTF has provided only a murky sense (at best) of its claimed burden. *See id.* (noting that the plaintiff's counsel failed to make reasonable efforts to limit the burden of discovery directed to the non-party, but that "additional effort by [the non-party was] in order").

Moreover, the general third-party discovery standard cuts in favor of Proctorio. *See Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008) ("In assessing undue burden, courts look at the relevance of the documents sought, the necessity of the documents sought, [and] the breadth of the request.") (citation omitted). The documents sought are relevant and necessary, and the breadth of the request is reasonable. In *Behrend*, the court granted the motion to compel the third-party to produce subpoenaed documents even after the third-party asserted that it "would endure severe financial hardship if it were forced to hire legal counsel to review the 400-500 unorganized boxes of documents for privilege." 248 F.R.D. 84, 86-97 (D. Mass. 2008). In discussing cost allocation, the court noted that the third-party had an interest in the outcome of the litigation. *Id.* FFTF is in an analogous position. Despite what it might contend

in its new litigation construct, FFTF has a demonstrated interest in Johnson's suit given its stated intention of disparaging Proctorio and its continued collaboration with Johnson. Even taking inconvenience and expense into account for FFTF as a non-party, the burden of the Subpoena does not outweigh the necessity of the documents sought to support Proctorio's efforts to understand Johnson's motives, which Proctorio must do to litigate its claims and defenses. *See Demers v. LaMontagne*, No. Civ 98-10762-REK, 1999 WL 1627978 at *2 (D. Mass. May 5, 1999) (holding that the defendants' subpoena requesting all documents related to four years of communications about the plaintiff was "necessary to explain fully the relationship between [the plaintiff] and the [non-party]" and "not overbroad").

Finally, FFTF cites inapposite case law to draw unwarranted conclusions about the Subpoena. For example, in *Smith* – unlike here – the subpoenas sought all documents regarding six broad categories relating to the plaintiff dating back at least eleven years. *See Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174, 177 (D. Mass. 2021). In *Everlight*, the court found that the subpoena in question, while not unduly burdensome, was overly broad—covering six categories. *See Trustees of Boston Univ. v. Everlight Elecs. Co. Ltd.*, 2014 WL 12792496 at *4-5 (D. Mass. Sept. 8, 2014). In comparison, the Subpoena is considerably less demanding. Unlike in *Smith* and *Everlight*, the Subpoena only asks for *two* categories of documents relating to Johnson and Proctorio dating back just *four* years, and excludes any privileged or publicly available materials. *Smith* and *Everlight* do not support FFTF's position, but instead show that RFP Nos. 1 and 5 are neither overly broad nor unduly burdensome.

### C. The Subpoena is Proper, and Essential to this Litigation.

FFTF argues that the Subpoena is "objectionable because it is plainly targeted at uncovering information to use against FFTF and broader opposition to e-proctoring, not

15

Johnson," yet fails to provide anything beyond a conclusory accusation. *See* Ex. Dkt. No. 2 at 11. Given that Proctorio agreed to limit the scope of compliance to documents related specifically to Proctorio or Johnson, and also agreed to receive the documents with an AEO designation, this insinuation about Proctorio's use of the Subpoena has no factual basis. For the sake of its narrative, FFTF ignores Proctorio's good-faith efforts to narrow discovery and pretends that the information sought by the Subpoena has no bearing on the underlying litigation. Nothing could be further from the truth. Proctorio seeks these documents to litigate Johnson's lawsuit, not because of any fictionalized motive posed by FFTF in its motion and subsequent press releases.

### III. THIRD-PARTY SUBPOENAS ARE COMMON DISCOVERY TOOLS, NOT INTIMIDATION DEVICES.

Although FFTF depicts the Subpoena as a tactic of intimidation and infiltration, it is simply an ordinary use of a standard discovery device. Third-party subpoenas are used frequently in civil litigation, and the Subpoena is no exception. *E.g.*, Steven S. Gensler and Lumen N. Mulligan, *Rule 45. Subpoena*, 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY (2022) ("Subpoenas are most frequently directed at nonparties and, indeed, are often the only way to obtain discovery from nonparties absent their consent."); *see also Ellora's Cave Pub., Inc. v. Dear Author Media Network, LLC*, 308 F.R.D. 160, 161 (N.D. Ohio 2015) ("A subpoena is a mechanism commonly used in the discovery process to obtain relevant documents, deposition testimony, and other information from people and entities who are not parties to the litigation."). FFTF's bald assertion that Proctorio served this subpoena solely to intimidate FFTF cannot justify quashing the Subpoena. *See Confederate Motors, Inc. v. Terny*, No. CIV.A. 11-10213-JGD, 2012 WL 612506, at *2 (D. Mass. Feb. 24, 2012) (denying motion to quash and noting "there is no evidence that [defendant] issued the subpoena in an attempt to

harass, intimidate, or annoy [the third-party]"); *see also Schroeder v. Humana Inc.*, No. 12-C-00137, 2012 WL 4849893, at *1 (E.D. Wis. Oct. 11, 2012) (refusing to quash subpoena and rejecting argument that "the subpoenas represent discovery tactics that are improper and intended to intimidate and harass Plaintiffs"). FFTF's mere contempt for Proctorio does not justify an avoidance of its obligation to produce relevant documents as dictated by the great weight of applicable black-letter law.

## **CONCLUSION**

For the foregoing reasons, Proctorio respectfully requests that the Court deny FFTF's motion to quash or modify the Subpoena.

Dated: March 7, 2022

Respectfully Submitted,

*/s/ Harry P. Cohen*
Harry P. Cohen (MA Bar No. 089150)
HCohen@crowell.com
CROWELL & MORING LLP
590 Madison Ave. #20
New York, NY 10022
Telephone: (212) 223-4000
Facsimile: (212) 223-4134

Justin D. Kingsolver (AZ Bar No.035476)*
JKingsolver@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Gabriel M. Ramsey (CA Bar No. 209218)*
Jacob Canter (CA Bar No. 324330)*
GRamsey@crowell.com
JCanter@crowell.com
CROWELL & MORING LLP

3 Embarcadero Center, 26th FloorSan Francisco, CA 94111 Telephone: (415) 986-2800
Facsimile: (415) 986-2827

*\* Pro Hac Vice Pending*

*Attorneys for Defendant Proctorio, Inc.*

## **CERTIFICATE OF SERVICE**

I, Harry P. Cohen, hereby certify that on March 7, 2022, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Harry P. Cohen*
Harry P. Cohen (BBO No. 089150)